1 | Wesley T. Green, CA BAR #201107
CORPORATE COUNSEL
2 | P.O. Box 1350
9500 S. DeWolf Ave.
3 | Selma, California  93662
4 | Telephone: (559) 834-6677
Facsimile:  (559) 834-4848
5 | wgreen@lionraisins.com

6
Attorney for Plaintiff,
7 | LION RAISINS, INC.

8

9

10 | UNITED STATES DISTRICT COURT

11 | EASTERN DISTRICT OF CALIFORNIA

12

LION RAISINS, INC.,                              )  Case No.: 1:08-CV-00358-OWW-SMS
13                                                )
14 |         Plaintiff,                           )  **MOTION TO APPROVE SUPPLEMENT**
                                                  )  **AND SUPPLEMENTAL MEMORANDUM**
15 |    vs.                                       )  **OF POINTS AND AUTHORITIES IN**
                                                  )  **SUPPORT OF PLAINTIFF'S MOTION FOR**
16 | UNITED STATES DEPARTMENT OF                  )  **DISCOVERY [FREEDOM OF**
AGRICULTURE,                                      )  **INFORMATION ACT]**
17                                                )
18 |         Defendant.                           )  DATE:   December 8, 2008
                                                  )  TIME:    10:00 a.m.
19                                                )  COURTROOM:  3

20                                                   (Honorable Oliver W. Wanger)
21

22 |                              **MOTION**

23 |       Pursuant to FRCP Rule 15(a)(1)(A) and Local Rule 15-220, Plaintiff motions the Court for

24 | prior approval to supplement its *Memorandum of Points and Authorities in Support of Plaintiff's*

25 | *Motion for Discovery* filed on September 29, 2008 without retyping. While the proposed supplement

26 | references the original pleading for ease and convenience, the supplement is complete in itself. This

27 | motion is based on newly discovered evidence and ensuing arguments presented in the proposed

28

MOTION TO APPROVE SUPPLEMENT AND
SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY

1  supplement below and the further declaration of Wesley T. Green and attachments thereto. Defendant

2  has yet to respond to the original pleadings and its response is due on or before November 21, 2008.

3

4  **SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

5  **I.**

6  **AUTHORITY**

7  [No supplement required]

8  **II.**

9  **SUPPLEMENTAL STATEMENT OF FACTS**

10  On September 29, 2008, Lion Raisins, Inc. ("Lion") filed a *Memorandum of Points and*

11  *Authorities in Support of Plaintiff's Motion for Discovery* ("MPA"). As stated therein, on April 14, 2004

12  the Freedom of Information Act ("FOIA") Officer for the Agricultural Marketing Services of the United

13  States Department of Agriculture ("AMS") released 1,270 Certificates to Lion that were prepared from

14  January 1995 through December 31, 2000 (MPA ¶ II(B)(2) pg. 7, lines 5-7). Meanwhile, Lion had filed

15  several FOIA requests for Worksheets (i.e. draft Certificates) for the same exact time period. In support

16  of withholding them, David W. **Trykowski**, current Chief Compliance Officer of the AMS, declared on

17  August 10, 2005 and October 16, 2007[1]  that there are approximately **1,270 Worksheets** that were

18  transferred into his custody and control from the local inspection office in Fresno, California to the AMS

19  Compliance Office in Washington, D.C. (MPA ¶ II(B)(10), pg. 14, lineS 10-12; First Amended

20  Complaint "FAC", Ex. 2, ¶ 11).

21  After filing the MPA on September 29, 2008, Lion discovered new evidence from the AMS

22  FOIA Officer that is in direct conflict with the declarations of Mr. Trykowski. Beginning on or about

23  January 2008, Lion made numerous requests for verification by the AMS FOIA Officer that each of the

24  1,270 Worksheet had been preserved (MPA ¶ II(B)(7), pg. 11, lines 12-14). After dragging her feet for

25  over eight months, AMS **FOIA Officer**, Maria Sanders, verified on September 30, 2008 that the

26

27
_____

28
[1] Lion Raisins, Inc. vs. USDA, Case No., 1:05-cv-0062-REC-SMS,[Doc 60-2] DECLARATION
OF DAVID W. TRYKOWSKI IN SUPPORT OF DEFENDANT'S OPPOSITION TO
MOTION FOR RELIEF FROM JUDGMENT, ¶ 5.

MOTION TO APPROVE SUPPLEMENT AND
SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY

1   Worksheets had been preserved. On October 10, 2008, she stated that there are approximately **1,100**

2   **Worksheets**—a discrepancy of 170 Worksheets. Lion then asked her for an exact number, but to date

3   Lion has not received a reply.

4         The newly discovered evidence also bears on the issue of bad faith by the agency. In January

5   2001, the USDA filed a complaint against Lion seeking debarment from inspection services and alleging

6   that in 1997 and 1998 Lion misrepresented inspection results on USDA Certificates (I&G Docket No.

7   01-0001; MPA ¶ II(A)(5), pg. 5, lines 1-3). At that time, USDA inspectors recorded inspection results at

8   the time of packing onto an inspection sheet. If Lion requested a Certificate, the inspector would transfer

9   the results onto a computer-generated Worksheet and then printed the Worksheet. A Lion employee

10  typed the Certificate from the Worksheet and returned both documents to the inspector for proofreading

11  and signature of the Certificate.

12        Upon final review, Lion management routinely discovered that many Certificates had

13  typographical errors and did not conform to the buyer's specification (e.g. the moisture percentage was

14  too high). A reviewing manager testified on March 21, 2006 that approximately 20% of signed

15  Certificates had an error that was later corrected by a USDA inspector with a replacement Certificate. A

16  former Lion quality control manager testified on February 25, 2005 that once or twice a month he had to

17  get a replacement Certificate from an inspector because the first one did not conform to the buyer's

18  specification. He testified further that the replacement Certificates were often based on Lion's analysis of

19  Lion's retention sample. An independent packer testified on March 24, 2005 that inspectors rewrote

20  Certificates that failed to conform to moisture specifications (e.g.15.7%) after an inspector rewrote the

21  Worksheet to conform to the specification (e.g. 15%), and that inspectors felt more comfortable doing so

22  if the other samples were close to or below the specification. A USDA inspector testified on August 1,

23  2002 that she "recycled" Worksheets. Mr. Trykowski was present during all of that testimony. He

24  testified on March 27, 2005 that when the Worksheets were still in Fresno, California that every

25  Worksheet was attached to a Certificate, but not every Certificate had a Worksheet (i.e. there are more

26  Certificates than Worksheets). In support of withholding the Worksheets, he declared in a FOIA case on

27  September 9, 2005 that inspectors can change Worksheets and their original findings after a retest,

28  recheck or appeal inspection (FAC, Ex. 2, Suppl. Decl. Trykowski ¶¶ 5-6).

MOTION TO APPROVE SUPPLEMENT AND
SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY

1    All of that evidence tends to explain the Worksheet discrepancy—and the alleged

2    misrepresentations—if only 170 of the 1,270 (13%) Worksheets were recycled with handwritten changes

3    to instruct Lion to type replacement/corrected Certificates after a retest, recheck, reinspection,

4    reevaluation, etc. Mr. Trykowski, however, testified incorrectly on December 8, 2003 that such results

5    would have also been recorded on the inspection sheet prepared at the time of packing. His testimony is

6    belied by his subsequent declaration on September 9, 2005 that inspectors were not required to record

7    results on the inspection sheet but had some latitude to record them elsewhere (FAC, Ex. 2, Suppl. Decl.

8    Trykowski ¶ 3). Furthermore, on June 30, 2004 and September 20, 2005 Lion technical advisors

9    presented documentary evidence that retests, set asides, rechecks, releases, and other mandatory entries

10    were commonly omitted from inspection sheets and other USDA records. Even a USDA inspector

11    claimed on June 25, 2002 that she did not remember if retests were always recorded on line check sheets.

12    After the close of evidence and after Lion's shipping files were returned from the USDA in June

13    2008, Lion discovered an inspector-signed Certificate with a moisture percentage that exceeded the

14    buyer's specification. The erroneous Certificate matched the inspection results and the computer-

15    generated Worksheet. The file also included an inspector-signed replacement Certificate that matched

16    reinspection results that were handwritten by an inspector on the Worksheet at the "time of shipment"

17    but *not* on the inspection sheet (MPA¶ II(B)(7), pg. 10, lines 16-20) . According to USDA procedure,

18    Certificates do not have to reflect the inspection sheet but may properly be prepared from "worksheets"

19    or "any other pertinent notes or records relative to an inspection." For those reasons, Mr. Trykowski

20    (who reviewed Lion's FOIA request) and the USDA (which is attempting to debar Lion) have a strong

21    motive to conceal updated Worksheets that match replacement Certificates but not the inspection sheet.

22    **II.**

23    **SUPPLEMENTAL ARGUMENT IN SUPPORT OF DISCOVERY**

24    The court should permit discovery because (a) there is a direct contradiction regarding the

25    total number of Certificate Worksheets and (b) there is a genuine issue about the adequacy of the

26    search. First, Mr. Trykowski declared in 2005 and 2007 under penalty of perjury that there are

27    approximately 1,270 Worksheets that were prepared from January 1, 1995 through December 31,

28    2000, which matches the number of Certificates that had been released in 2002. Then in 2008, the

MOTION TO APPROVE SUPPLEMENT AND
SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY

1    AMS FOIA Officer represented that there are approximately 1,100 Worksheets from that same exact

2    time period.

3          The court should also permit discovery because there are genuine issues as to USDA's good

4    or bad faith. Lion suspects that 170 Worksheets have been illegally transferred or destroyed. Lion's

5    suspicion is reasonable in light of the fact that Trykowski's declaratory estimates preceded the FOIA

6    Officer's estimate and the Worksheets are in the custody and control of his Office. Second, since

7    September 2007, the FOIA Officer has refused to respond to Lion's request for Worksheet

8    disposition records (MPA ¶ II(B)(9)). Third, on September 22, 2008 the FOIA Officer rejected Lion's

9    most recent request on August 25, 2008 for the Worksheets, despite direction from the Fresno district

10    court on August 13, 2008 that Lion's remedy was to file a new request. Fourth, the USDA

11    contumaciously and arbitrarily withheld or destroyed other reinspection records (e.g. Memos and Red

12    Tag Ledger) (MPA ¶ II(B)(4, 10)). Fifth, the USDA has routinely delayed responses to other

13    Worksheet-related requests from Lion (e.g. Worksheets, disposition records, and verification of

14    preservation).

15    Furthermore, Mr. Trykowski has not been forthcoming about Worksheets. It simply strains credulity

16    to believe his declarations that there are approximately 1,270 Worksheets—the exact same number of

17    Certificates that were released. He heard credible testimony and reviewed documentary evidence that

18    (a) 20% of the Certificates that inspectors signed had errors that were corrected with replacement

19    Certificates; (b) inspectors signed one or two nonconforming Certificates a month that were corrected

20    with replacement Certificates; and (c) inspectors recycled, rewrote and changed Worksheets. He

21    testified under oath that there are more Certificates on file with the USDA than Worksheets and

22    declared that inspectors may change Worksheets and results after a retest or reinspection. Mr.

23    Trykowski's estimate is either an: (a) intentionally uncorroborated statement based solely on the number

24    of Certificates released to Lion; (b) accurate count at the time of his declarations but 170 Worksheets

25    have been either unlawfully transferred, withheld or destroyed; (c) accurate count now but the FOIA

26    Officer's estimate is wrong; or (d) intentional misrepresentation under penalty of perjury to conceal

27    exculpatory evidence, agency misconduct or negligent recording practices. Under any of those scenarios,

28    the court should grant discovery for a reasonable inquiry.

MOTION TO APPROVE SUPPLEMENT AND
SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY

5 of 7

1    Finally, Mr. Trykowski and/or the USDA also have a strong motive to destroy some of the

2 Worksheets. One of Lion's factual defenses at one of the administrative debarment proceeding is that

3 the Certificates that allegedly misrepresent inspection results accurately reflect retest, recheck and/or

4 reinspection results taken at the time of shipment and handwritten by an inspector onto a recycled

5 Worksheet, which is not a violation. After the close of evidence in March 2006 and Lion's shipping

6 files were returned in June 2008, Lion discovered evidence that a moisture reinspection result had

7 been handwritten on a Worksheet. Before the handwritten change, however, a Certificate had already

8 been typed to match the moisture percentage recorded on the inspection sheet, which exceeded the

9 buyer's maximum moisture tolerance (MPA ¶ II(B)(7)). The reinspection result <u>was not recorded on

10 the inspection sheet</u>, just the Worksheet. The result is an unmarked, superseded Certificate (that

11 matches the outdated inspection sheet) and an unmarked, corrected Certificate (that matches the

12 recycled and updated Worksheet) that very much resembles the alleged misrepresentations.

13    That example explains why there is at least one less Worksheet than the number of

14 Certificates and seriously undermines the testimony of Mr. Trykowski given on December 8, 2003:

15    THE WITNESS:  The condition of the raisins, what they may or may not have
been on March 20th is immaterial to my investigation and the procedures with which
16    USDA issue certificates.

17    The inspection was conducted on March 7th, 1997.  At that time, they were found
to be US Grade C.  A certificate was subsequently asked for.  At that time a
18    certificate was written based on the results that were found on March 7th.

19    Now, if someone had felt that the conditions of the raisins had improved or
changed, then they could have asked for a reinspection.  But on this line check sheet,
20    there's no indication that a reinspection had been done.  So based on the information
that's on these documents, I would have to conclude that the condition of the raisins
21    were Grade C.

22    BY MR. MOODY:

23    Q.    Do you know from your investigation or your personal experience if
reinspections are always documented?

24    A.    To the best of my knowledge, they are.
Q.    And where are they documented?

25    A.    Reinspections are documented on the line check sheets where the original
inspections occur.

26

27    Should the 170 Worksheets produce further evidence of reinspections that were not recorded

28 on an inspection sheet, the USDA's attempt to debar Lion would surely fail. It is probable that Lion

MOTION TO APPROVE SUPPLEMENT AND
SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY

6 of 7

1  would discover such evidence, especially in light of testimony from an inspector that she could not

2  remember if retests were recorded on line check sheets and testimony from Lion technical advisors

3  that inspectors did not always record retests, set asides, rechecks and releases on the inspection sheet.

4  Mr. Trykowski and the USDA, therefore, have a strong motive to conceal evidence on Worksheets

5  that were probably changed and updated for replacement Certificates.

6                                                  **IV.**

7                                          **CONCLUSION**

8       The Court should grant discovery due to the discrepancy between Mr. Trykowski's estimates

9  that there are 1,270 responsive Worksheets and the FOIA Officer's subsequent estimate of 1,100

10 Worksheets. In addition, the Court should grant discovery because there is substantial and concrete

11 evidence that the USDA is hiding exculpatory evidence from Lion in order to debar Lion from

12 inspection services (i.e. Worksheets on which reinspection results were recorded at the time of

13 shipment).

14                                                 **V.**

15                                          **REQUEST**

16      For good cause shown, Plaintiff requests the Court to approve this Supplement, without being

17 retyped and with references to the original pleading, and the supporting Further Declaration of

18 Wesley T. Green (Paragraphs 57 through 70). For good cause shown, Plaintiff also requests the

19 Court's permission for Plaintiff to exceed the standing order limiting motions to 25 pages.

20

21 Dated: October 28, 2008

22  /s/ Wesley T. Green
    Wesley T. Green, JD MBA,
23  Corporate Counsel to Plaintiff Lion Raisins, Inc.