1
2
3
4              UNITED STATES DISTRICT COURT
5             EASTERN DISTRICT OF CALIFORNIA
6

| LION RAISINS, INC., | 1:08-CV-00358-OWW-SMS |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | |
| Defendant. | |

## I. INTRODUCTION

Before the court are cross-motions for summary judgment filed by Defendant United States Department of Agriculture ("USDA") and Plaintiff Lion Raisins, Inc. ("Lion"). The parties seek summary judgment on Lion's claims asserted in its First Amended Complaint ("FAC"). Most of these claims arise under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq.

The following background facts are taken from the parties' submissions in connection with the motion and other documents on file in this case.

## II.   BACKGROUND

A.   <u>Lion And The Investigation Into Its Purported Misconduct</u>

Lion, a family-owned business since 1903, is the largest raisin packer and raisin exporter in California. Lion prides itself on its ability to guarantee exacting standards of quality and condition that are demanded by its overseas buyers.

1

Lion is governed by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601-627, and a federal marketing order, 7 C.F.R. §§ 989.1-989.801, that regulate the sale of raisins. *See Lion Raisins Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1076 (9th Cir. 2004). The marketing order requires that raisin handlers, like Lion, have their products inspected by the USDA when they are received from producers and again before they are shipped to buyers. 7 C.F.R. §§ 989.58-989.59.

USDA inspectors assess the quality of raisins in various categories such as weight, color, and size. USDA inspectors then document their observations on "line check sheets" and assign grades to the raisins. In turn, information from the line check sheets is summarized on USDA inspection certificates that Lion can send to purchasers as an assurance of quality.

In the past, when Lion requested an inspection certificate with respect to certain raisins, the USDA grader would prepare a draft version of the certificate called a certificate "worksheet." The USDA grader prepared the worksheet based on inspection results previously recorded in the line check sheet. The USDA grader then gave the worksheet to Lion personnel. Based on information in the worksheet, Lion typed up the original inspection certificate and returned it and the worksheet to the USDA grader. The USDA grader then signed and returned the original certificate to Lion along with carbon copies (on blue tissue paper) of the certificate. Typically, the USDA would retain the worksheet and a copy (on blue tissue paper) of the certificate. (Trykowski Decl. ¶¶ 10-11.)

On February 20, 1998, the USDA's Agricultural Marketing Service ("AMS") received an anonymous tip that Lion was falsifying

2

inspection certificates.  After receiving the tip, G. Neil Blevins, then Chief Compliance Officer for the AMS, initiated an administrative investigation into Lion.  At times, David Trykowski, then Senior Compliance Officer, and Maria Esguerra-Martinez assisted in the investigation.  The investigative team reported that Lion had falsified three inspection certificates between 1997 and 1998.  Based on this, Blevins recommended a criminal investigation by the USDA Office of Inspector General ("OIG").  On May 27, 1999, the AMS Compliance Office forwarded to the OIG a request for a criminal investigation.

In October 2000, special agents with the USDA OIG executed a search warrant at Lion's place of business in Selma, California.  The agents seized Lion's shipping records pertaining to export customers from approximately 1995 to October 2000.  Ultimately, no criminal indictments or criminal charges were made against Lion.  The USDA did, however, initiate three administrative enforcement proceedings against Lion.[1]

B.   **Administrative Enforcement Proceedings**

   1.   **First Administrative Proceeding – I&G No. 01-0001**

On January 12, 2001 the USDA filed the first administrative complaint (I&G No. 01-0001)[2] against Lion alleging that Lion, and its principal officers, agents and affiliates, falsified and

---

[1] **In addition to these administrative enforcement proceedings, on January 12, 2001, the AMS suspended Lion from eligibility for government procurement contracts based on the three falsified inspection certificates.  This suspension was later set aside by the U.S. Court of Federal Claims.**

[2] **"I&G" stands for Inspection and Grading.**

3

misrepresented USDA certificates.   The potential punishment for such misconduct includes being debarred from receiving benefits provided for under the Agricultural Marketing Agreement of 1946. The original administrative complaint alleged the falsification of the same three certificates discovered in the administrative investigation.   The complaint was later amended to allege that Lion misrepresented USDA inspection results on three (3) forged certificates, one (1) altered certificate, and two (2) Lion documents that stated "Source of Sample: Officially Drawn" and "U.S. Grade."

Between January 28, 2002, and March 23, 2006, seventy-two days of hearings were held.   Among other evidence, the USDA presented testimony of inspectors, Trykowski, and two former Lion employees. Colleen Carroll represented the USDA in the proceeding.[3]

After the close of evidence, Lion petitioned to reopen the hearing apparently on the ground that the USDA allegedly suppressed, altered and/or destroyed evidence.   On May 4, 2009 (after the parties filed their initial summary judgment briefing in this case), the Administrative Law Judge ("ALJ") issued an initial decision adverse to Lion and also denied Lion's petition to reopen the hearing.   Lion has not stated whether it will appeal.

**2.   Second Administrative Proceeding – I&G No. 03-0001**

On October 11, 2002, the USDA filed a second administrative complaint (I&G No. 03-0001) against Lion alleging additional violations in connection with USDA certificates (allegedly Lion

---

[3] **Based on its research, Lion represents that Carroll is married to Blevins (and has been since April 1998).**

**4**

altered one additional certificate by changing the moisture content). Carroll represented the USDA. After various procedural steps and motions, in January 2008, the proceeding was finally scheduled for hearing. In March 2008, the USDA provided witness and exhibit lists to Lion, and in June 2008, the hearing began. Trykowski and Blevins testified as USDA witnesses.

The hearing was temporarily suspended while certified questions were submitted to the USDA Judicial Officer ("JO") concerning a legal dispute over the submission of exhibits. The hearing resumed, and on May 4, 2009, the ALJ issued an initial decision adverse to Lion. Lion has not stated whether it will appeal.

The ALJ decision of May 4, 2009, encompasses both of the administrative proceedings/complaints (I&G Nos. 01-0001 and 03-0001). According to the USDA, the ALJ found that Lion had falsified inspections results and ordered debarment. The debarment period is set to run concurrently with the five-year debarment period that was recently ordered as a result of the third and final administrative complaint discussed below.

　　　　　3.　　Third Administrative Proceeding – I&G No. 04-0001

On November 20, 2003, the USDA filed a third administrative complaint against Lion (I&G No. 04-0001) alleging that Lion misrepresented inspection results. The ALJ dismissed a portion of the complaint on statute of limitations grounds. The remainder of the complaint alleged that Lion misrepresented inspection results on thirty-three (33) Lion "facsimile" certificates and altered the moisture percentage on one additional certificate. The hearing began on February 21, 2006, with Carroll representing the USDA once

1   again.  Trykowski and Blevins were USDA witnesses.  The evidence
2   closed on March 3, 2006.

3       In June 2006, the ALJ issued a decision and found that Lion
4   had engaged in a pattern of misrepresentation, or deceptive or
5   fraudulent practices in connection with the use of official
6   inspection certificates and/or inspection results.  The ALJ ordered
7   debarment for five years.  Lion appealed that decision on July 12,
8   2006. On April 17, 2009 (just a few weeks before Lion and the USDA
9   filed their initial summary judgment briefing) the JO issued a
10  decision and order which largely upheld the ALJ's disposition.  The
11  JO's order debarred Lion from receiving inspection services for
12  five years.

13  C.   Lion's FOIA requests

14       After the criminal investigation, and during the
15  administrative enforcement proceedings, Lion submitted a number of
16  FOIA requests to the USDA.  Some of the FOIA requests precipitated
17  earlier litigation and appeals to the Ninth Circuit.  The FOIA
18  requests that are the subject of *this* lawsuit, and that form the
19  basis of the counts in Lion's complaint, are set forth below with
20  the USDA's responses.

21       1.   Count I – FOIA Request No. 97-07

22       On August 1, 2007, Lion submitted the following request to the
23  USDA:

24       This is a request under the Freedom of Information Act
         for USDA/AMS policies and procedures for the storage,
25       archiving, transferring, retrievability, access controls,
         retention, and disposal of records that were created from
26       1995 through 2000. Please include all revisions and
         amendments thereto, and any sections of the policy for
27       defendants or respondents against whom the USDA filed a
         complaint.
28

(Doc. 43-8, Ex. 46.)  The request was assigned FOIA No. 97-07.  The USDA searched for records and on August 30, 2007, the USDA issued a written response (Doc. 43-8, Ex. 47), enclosing "two documents" responsive to the request.  The two documents totaled 290 pages.  The documents included the "USDA, AMS, <u>FV</u>, PPB File Code 175-B-20 Records Retention and Disposition instruction" with its "related Forms Retention Index and GRS handbook," and "AMS Directive 270.1." (Blazejak Decl. ¶ 8) (emphasis added.)

On October 11, 2007, Lion submitted a written appeal to the Administrator of the AMS (Doc. 43-8, Ex. 49).  Lion appealed on the grounds that the "FOIA Officer released a disposition plan for F&V forms" but did not release disposition plans for the "FR and RAC series" of forms.[4]  In its appeal letter, Lion cited federal regulations (36 C.F.R. § 1228.22) that address a federal agency's responsibility to develop record schedules for its records, including retention and disposition instructions. Based on federal regulations, Lion stated that it believed "that the USDA must have created disposition plans not only for F&V forms but also [for the] FR and RAC forms."  To support its position, Lion cited specific statements from certain USDA agents.

In response to the appeal, the USDA conducted an additional search and issued a final written response on January 28, 2008 (Doc. 43-8, Ex. 50).  The USDA decided to release an additional sixteen (16) pages of documents.  None of the additional documents, however, appear to be disposition plans specifically for the "FR"

---

[4] "F&V" stands for Fruit and Vegetable, "FR" stands for Fresno, and "RAC" stands for Raisin Administrative Committee.

7

and "RAC" forms.  The USDA did not indicate that it was withholding
any further documents.

In the first count of Lion's FAC, Lion claims that the USDA
"continues to withhold the disposition plans for the 'FR' and 'RAC'
forms."

2.   Count II – FOIA Request No. 96-07

On July 31, 2007, Lion submitted the following request to the
USDA (received on August 1, 2007):

> This is a request under the Freedom of Information Act
> for records related to the disposition of *inspection*
> *documents* for Lion, including, but not limited to, what
> agency had custody of the documents, what documents were
> destroyed, who destroyed them, how were they destroyed,
> and where were they destroyed. For instance, in reply to
> Lion's request for inspection documents (FOIA 60-07) the
> USDA stated on June 13, 2007, 'Most documents responsive
> to those items were destroyed in accordance with Agency
> file disposition requirements.'

(Doc. 43-8, Ex. 45) (emphasis added.)   In its submission, Lion
defined "inspection documents" as "any records pertaining to
incoming or outgoing inspections, including but not limited to" the
following:

> 1) Incoming meeting lots ledger,
> 2) ledger record (meeting and failing) memorandum reports,
> 3) ledger record of meeting lots,
> 4) fumigation certificates (FR-12),
> 5) fumigation letters (FR-13),
> 6) line check sheets (FR-20 and FR-21),
> 7) microanalysis reports (FR-30),
> 8) weight check sheets (FK-31A and FR-31B),
> 9) report of meeting lots of processed raisins ledgers
> (FR-40),
> 10) processed failing raisins held ledgers (FR-41),
> 11) surveillance records (FR-43),
> 12) daily compliance check sheets (FR-51),
> 13) potential violation or complaints (FR-52),
> 14) reports of raisins to be charged on AMS-183 (FR-53),
> 15) worksheets for certificate (PK-146-10),
> 16) reconditioning worksheets,
> 17) requests for USDA certificate (FR-146-11),
> 18) report of inspection (FV-66),
> 19) certificates of quality and condition (FV-146),

8

1     **20) memorandum reports of inspection for processed raisins (FV-489),**
2     **21) memorandum reports (FV-489) accountability ledgers,**
      **22) condition inspection and failing lots ledgers,**
3     **23) memorandums (FV-490),**
      **24) certificate accountability ledgers (for FV-44 and FV-146),**
4     **25) airstream sorter results,**
      **26) power of attorneys,**
5     **27) pallet control cards,**
      **28) daily pack-out reports (RAC- 15),**
6     **29) buyer specifications,**
      **30) correspondence relating to inspections,**
7     **31) investigations, and**
      **32) any other records relating to inspection services at Lion**
8     **from 1995 to the present.**

9 **(Doc. 43-8, Ex. 45.)  The request was assigned FOIA No. 96-07.**

10     **The USDA searched for records and on August 30, 2007, the USDA**

11 **issued a written no-records response. (Doc. 43-8, Ex. 47.)**

12 **Specifically, in its response, the USDA asserted that "after the**

13 **specified retention period for inspection documents . . . the**

14 **documents are destroyed.  There are no records either created or**

15 **maintained regarding the destruction of the documents in your**

16 **letter. Therefore, we have no documents responsive to your**

17 **request." (*Id.*)**

18     **On October 11, 2007, Lion submitted a written appeal. (Doc.**

19 **43-8, Ex. 48.) In its appeal, Lion relied upon federal regulations**

20 **to advance its argument that responsive records should exist:**

21     **Lion hereby appeals the FOIA Officers' reply. The AMS has**
      **a federally-regulated records management program (36**
22     **C.F.R. § 1228.1 through 1228.282 and AMS Directive 270.1,**
      **attached as Exhibit 'C'). . . . Federal regulations**
23     **state, 'No Federal records shall be destroyed or**
      **otherwise alienated from the Government except in**
24     **accordance with procedures described in this part 1228**
      **(44 U.S.C. 3314).' (See 36 C.F.R. § 1228.20.) For records**
25     **that were properly destroyed, the regulations state,**
      **'Agencies must also create and maintain records that**
26     **document the destruction of temporary records.' 36 C.F.R.**
      **§ 1220.36(b) For records improperly destroyed, the**
27     **regulations state, 'The willful and unlawful destruction,**
      **damage, or alienation of Federal records carries a**
28     **maximum criminal penalty of a $2,000 fine, 3 years in**

1

2

3

> prison, or both.' 36 C.F.R. § 1228.102. Associate Administrator, Dr. Kenneth Clayton, has been delegated oversight and responsibility for the [p]rogram. (Exhibit 'C', Section VI. Responsibilities)

4

5

> The basis of this appeal is that the requested disposition records were created and improperly withheld. Otherwise, under the watch of Dr. Clayton the disposition records were either <u>not</u> created or unlawfully destroyed.

6

7

8

9

(*Id.*) (emphasis in original.)  In response to the appeal, the USDA conducted an additional search and issued a final written response on January 28, 2008. (Doc. 43-8, Ex. 50).  The written response reasserted that no responsive documents existed:

10

11

12

13

14

> The basis of your appeal of AMS FOIA number 96-07 is that the requested disposition records were either created and improperly withheld or destroyed; or that the disposition records were not created. In accordance with FOIA, AMS performed an additional search for responsive records and determined that there are no responsive records. Accordingly, we are upholding the agency's previous determination as to AMS FOIA number 96-07.

15

16

In the second count of Lion's FAC, Lion asserts a FOIA claim for the "refusal to produce" the "transfer and destruction" records it requested.

17

18

### 3.   Count III — FOIA Request No. 184-01

19

20

21

22

23

24

In August 2001, Lion submitted a request to the USDA for "any and all USDA line check sheets performed by the USDA at Lion Raisins, Inc. and Lion enterprises from and including 1991 to 2000."  Lion also requested "any and all USDA 'inspection certificates' for the same time frame with respect to each line check sheet." (Doc. 43-5, Ex. 1.)  The request was assigned FOIA No. 184-01.

25

26

27

28

In September 2001, the USDA issued a written response to the request in which it informed Lion that the requested records "are being withheld at this time pursuant to 5 U.S.C. § 552b(7)(A). The

**10**

1   requested records are currently under evaluation as evidence by the

2   Office of Inspector General as part of an on-going criminal

3   investigation and the production and release could reasonably be

4   expected to interfere with a pending law enforcement proceeding."

5   (Doc. 43-5, Ex. 2.)

6       This FOIA request resulted in litigation between the parties

7   and an appeal to the Ninth Circuit.  Ultimately, the Ninth Circuit

8   ordered AMS to release the line check sheets requested by Lion. *See*

9   *Lion Raisins*, 354 F.3d at 1085.

10      Following the appeal, on April 14, 2004, the USDA sent

11  correspondence to Lion stating it would release thousands of

12  responsive records, and that older documents no longer existed:

13          In response to [your] request and [the Ninth Circuit]
            decision, we are forwarding to you separately 10,055

14          documents which represent the USDA retained copies of
            Line Check Sheets for outgoing raisins inspected at Lion

15          Raisins, Inc., for the period August 1, 1995 to December
            31, 2000. Your request had asked for Line Check Sheets

16          from 1991, however, Line Check Sheets prior to August 1,
            1995, no longer exist because of record management

17          guidelines.

18          Also shipped to you separately are 1,270 documents
            representing USDA inspection certificates for the same

19          period of time which were issued at Lion Raisins, Inc.
            Once again, due to record management guidelines,

20          certificates issued prior to August 1995 no longer exist.

21  (Doc. 43-5, Ex. 3.)  On April 14, 2004, AMS did release, in full,

22  10,055 responsive documents that consisted of USDA retained line

23  check sheets along with associated forms FV-489 (Memorandum Reports

24  of Inspection) which were attached to the line check sheets.  The

25  AMS also released 1,270 pages of responsive inspection

26  certificates.

27      Following this production, on November 27, 2006, Lion

28  submitted a request for a "supplemental production." (Doc. 43-5,

Ex. 4.)   Lion asked for responsive records pertaining to "Afgan [Sic] and Chilean Raisins."   According to Lion's supplemental production request:

> David Trykowski . . . through Government's Counsel Colleen Carroll, represented on the record during the hearing on I&G No. 01-0001 (before ALJ Clifton) that there were additional documents responsive to Lion's original request, which <u>had not</u> been produced, pertaining to Afgan [Sic] and Chilean Raisins. Mr. Trykowski provided what he had available at the time, but stated there were more.  Lion's counsel immediately provided a list of documents it believed were . . . missing from those provided by Mr. Trykowski.

(*Id.*) (emphasis in original.) In response to Lion's supplemental production request, a search was performed.  On December 11, 2006, the USDA issued a written response and enclosed fifty-two (52) additional line checks sheets that documented the inspection of raisins imported from Afghanistan and Chile. (Trykowski Decl. ¶ 21.) In pertinent part the response states:

> I have enclosed 52 pages of documentation, numbered S-001 to S-052, which represents the USDA Line Check Sheets that support the inspection certificates documenting the certification of product imported by Lion Raisins from Afghanistan. These line check sheets were not included in the original submission of April 14, 2004, [which was in response to the Ninth Circuit's order] because these documents were filed separately from the line check sheets documenting the inspection of domestic product.

> Line check sheets for 11 of the certificates that were on the list Mr. Green provided to Mr. Trykowski could not be located. However, line check sheets for 10 certificates that were not on Mr. Green's list were located and have been enclosed. An extensive search of the records holding area maintained by the Fresno Inspection Office has been conducted and no further responsive documents could be located.

(Doc. 43-5, Ex. 5.)   Subsequently, on April 23, 2007, Lion submitted a letter to the USDA requesting another round of supplemental production. (Doc. 43-5, Ex. 6.) This time, Lion asked

12

for additional line check sheets and inspection memoranda. In its

letter, Lion states:

> After the close of evidence in . . . (I&G Docket No. 01-0001), Lion discovered that the USDA withheld four Line Check Sheets for raisins that were successfully reconditioned after having failed the initial inspection. Attached hereto as Attachment 'A' are the four previously withheld Line Check Sheets that were exchanged with Lion, identified as Exhibit 38 by AMS Counsel, Colleen Carroll. While approximately 136 reconditioning Line Check Sheets were released through FOIA, Lion anticipates that there are many more than four that were withheld, perhaps in the custody and control of AMS Investigator Trykowski. As with the previously withheld Line Check Sheets for Afghan raisins, Lion hereby requests a supplemental disclosure of all Line Check Sheets for reconditioned raisins, regardless of the type of reconditioning, i.e., identity preserved, identity commingled or various commingled (USDA Manual § 11 at 11.6, 11.7 and 11.8), and any other Line Check Sheets that were withheld for any reason, including those for raisins that were repackaged or blended, for example.
>
> In addition, the USDA produced approximately 494 Memorandum Report of Inspections, 15 of which are dated from 1995 through approximately August 1996 and the remaining dated approximately November 1999 through 2000. Such Memos were required to be issued and attached to the original Line Check Sheet when raisins were re-inspected, repackaged, reconditioned or blended with raisins that were returned or failed to ship within 90 days. . . . Lion observed evidence on Line Check Sheets that strongly suggests additional Memos were issued between August 1996 and November 1999. Lion hereby requests a supplemental disclosure of all such Memos that were withheld from 1995 through 2000 ('FV-489').

(*Id.*) In addition to this supplemental production request, Lion's

letter of April 23, 2007, contained a section that included new

FOIA requests for documents. The USDA assigned FOIA No. 60-07 to

the additional requests. The additional FOIA requests apparently

deal with "in-coming" raisins.

In response to Lion's April 23, 2007, supplemental production

request, another search was conducted that took "forty man-hours."

(Trykowski Decl. ¶ 26.) The search yielded 575 Memorandum Reports

1    of Inspection and 140 line check sheets.  These documents were then
2    forwarded to Washington D.C. where they were analyzed by a Program
3    Analyst  to  determine  whether  and  to  what  extent  they  had  been
4    previously  released  in  April  2004  (in  response  to  the  Ninth
5    Circuit's order). The Program Analyst determined that it appeared
6    four line check sheets and twenty-four (24) Memorandum Reports of
7    Inspection (FV-489) were not previously released.

8         On June 13, 2007, the USDA issued a written response enclosing
9    these documents, which were responsive to FOIA No. 184-01.[5] (Doc.
10   43-5,  Ex.  7.)    In  its  written  response,  the  USDA  stated  that
11   "[b]ased on the Agency's review the only Line Check Sheets for
12   reconditioned raisins that were not released were the four Line
13   Check Sheets from June 25, 1998, you had attached to your letter of
14   April 23, 2007.  Those four Line Check Sheets are again released in
15   this supplemental production . . . " (*Id.*) In addition to these
16   four  line  check  sheets,  the  USDA  provided  twenty-four  (24)
17   Memorandum Reports of Inspection (Form FV-489) "that did not appear
18   to have been released in April 2004." (Trykowski Decl. ¶ 26.)[6]

19        A few weeks later, Lion submitted a written appeal to the AMS
20   Administrator. (Doc. 43-5, Ex. 8.)   In its appeal, Lion claimed
21   that there should be more Memorandum Reports of Inspection and
22   pointed to "accountability reports" which "suggest" there may be
23   additional line check sheets as well.

24

25        [5] **The written response mistakenly identified the FOIA request
26   at issue as FOIA No. 60-07, not No. 184-01.**

27        [6] **The USDA's written response of June 13, 2007, states that
28   these documents "had not been previously released." (Doc. 43-5, Ex.
     7.)**

With respect to potential, additional Memorandum Reports of Inspection, Lion advanced three arguments:

1) <u>There should be responsive Memos from 1997-1999</u>: . . . [T]he USDA previously released 15 Memos from 1995 to December 19, 1996 and additional Memos from December 1999 through 2000. . . . The Memos were attached to Line Check Sheets, together numbering 10,055 pages. It is unreasonable to believe that no Memos were prepared from 1997 to December 1999. That timeframe coincides with the majority of the allegations in the three administrative complaints filed against Lion . . . .

2) <u>There should be additional responsive Memos from 1999-2000</u>: Pursuant to FOIA No. 184-001, the USDA released 24 Memos on June 13, 2007. Each Memo was from 2000 and all but one had been previously released. Obviously, Lion is concerned that the FOIA Officer failed to determine that 23 of 24 Memos had previously been released among the 10,055 documents disclosed after the Ninth Circuit Order. Lion is also concerned because the FOIA Officer failed to identify approximately 30 Memos that should have been released.  As summarized below, at least ten of those Memo numbers are recorded on a Line Check Sheet. Lion contends that these Memos are possibly being withheld because they are exculpatory. [The summary Lion provided included a list of thirty (30) Memos by their date and Memo number.]

3) <u>Line Check Sheet Remarks suggest there are additional responsive Memos</u>: . . . [T]here are at least three Line Check Sheets with Remarks indicating that a Memo should have been prepared for raisins that were repackaged or transferred to another container. As with the other responsive Memos, Lion asserts that they are possibly being withheld because of exculpatory evidence.

(*Id.*)  With respect to potential, additional line check sheets, Lion advanced one argument:

4) <u>Accountability Report indicates additional responsive Line Cheek Sheets</u>: It is our understanding that when raisins failed the initial inspection, the results were noted on a failing lots ledger. Upon successful re-inspection, the results were prepared on a separate Line Check Sheet and then transferred to the report of *meeting* lots ledger, which was previously disclosed. There are at least two references in the report of meeting lots to raisins that were transferred from the failing lots ledger but the separate LCS was not released. Lion contends that there are additional Line Check Sheets being withheld that evidence re-inspection results that likely support Lion's defense in the

15

administrative proceedings, as explained above.

(*Id.*) (emphasis in original.)  At the end of its written appeal letter, Lion stated it was requesting "full-disclosure of every Line Check Sheet and Memo as previously ordered by the Ninth Circuit Court of Appeals." (*Id.*)

In response to the appeal, another search was conducted. On September 4, 2007, the USDA issued a final written response, stating:

> The appeal provided three bases to support the contention that additional Memorandum Reports of Inspection for Processed Raisins (Forms FV-489) were possibly being withheld 'because they are exculpatory.' Agency files have been searched again and no documents responsive to the original request in FOIA 184-01 have been withheld, including any Forms FV-489.
>
> Additionally, it appears that you misunderstand the process for recording inspection results. The Freedom of Information Act does not require us to respond to your allegations of misconduct or to correct your misunderstanding regarding the inspection process. Accordingly, we simply reiterate that Agency records have been searched and that no additional responsive records were located.

(Doc. 43-5, Ex. 9.)

In count three of its FAC, Lion asserts a FOIA claim for the "refusal to produce [the] line check sheets and memorandum reports of inspection" it requested.

4.   Count IV – FOIA Request No. 85-04

On May 13, 2004, Lion submitted a request for USDA certificate "Worksheets" for the period of January 1995 through December 2000. (Doc. 43-6, Ex. 27.) The request was assigned FOIA No. 85-04.

On June 23, 2004, the USDA issued a written response stating that the requested records were in the custody of the AMS Compliance Office and were being withheld pursuant to Exemption

16

7(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A). (Doc. 43-6, Ex. 28.) The USDA noted the three, then-pending enforcement proceedings and stated that the "production and release of [the requested] records at this time could reasonably be expected to interfere with the Agency's pending administrative enforcement proceedings." (*Id.*)

On July 12, 2004, Lion appealed.  In its appeal, Lion argued:

> The USDA voluntarily gave each and every one of those worksheets to a Lion employee to type up the USDA's FV-146, Certificate of Quality and Condition. . . . USDA recently lost an extremely similar, if not identical, issue in the Ninth Circuit Court of Appeals regarding USDA Line Check Sheets and USDA Certificates. What the Ninth Circuit said in that matter is equally applicable here.

(Doc. 43-6, Ex. 29.)  On January 3, 2005, the USDA responded to the FOIA appeal and upheld the decision to withhold the worksheets in full pursuant to Exemption 7(A). (Doc. 43-6, Ex. 30.)   The USDA again noted the ongoing administrative proceedings and stressed the "prominent" role the documents played in the third administrative proceeding:

> The Agricultural Marketing Service (AMS) has filed three administrative complaints before the Department in an effort to debar Lion Raisins, Inc., from receiving all benefits of the Agricultural Marketing Act of 1946. The first complaint (I&G Docket No. 01-0001) is currently the subject of a hearing before an administrative law judge. The second administrative complaint (I&G Docket No. 03-0001) is pending review by the U.S. District Court.
>
> The third complaint (I&G Docket No. 04-0001) has not been scheduled for hearing yet. The type of documents which you seek in this appeal (Work Sheets for Certificate of Quality and Condition for Raisins ) play a prominent role in this third administrative complaint. The production and release of those records at this time could reasonably be expected to interfere with the Agency's pending administrative enforcement action.

(Doc. 43-6, Ex. 30.) On January 11, 2005, Lion filed a complaint under FOIA in the United States District Court for the Eastern

17

District of California seeking release of the worksheets. In October 2005, the district court upheld the USDA's decision to withhold the worksheets on the basis of Exemption 7(A) and granted summary judgment in favor of the USDA. *See Lion Raisins, Inc. v. U.S. Dep't of Agric.*, No. CVF050062RECSMS, 2005 WL 2704879, at *4-10 (E.D. Cal. Oct. 19, 2005). Lion appealed and the Ninth Circuit affirmed the district court's ruling. *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 231 F. App'x 563 (9th Cir. Apr. 30, 2007). In its opinion, the Ninth Circuit rejected arguments made by Lion:

> Despite Lion's arguments, it is apparent from the record that the Worksheets are not identical to any items that Lion already has in its possession, and they are therefore distinguishable from the Line Check Sheets at issue in *Lion Raisins I*; their disclosure would provide Lion with additional information about the ongoing proceedings, and interfere therewith. '[E]ven without intimidation or harassment[,] a suspected violator with advance access to the [agency's] case could construct defenses which would permit violations to go unremedied.' *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241, (1978) (internal quotation marks and citation omitted).

*Id.* at 565 n.2 (alterations in original).

Subsequently, on September 20, 2007, Lion submitted a "renewed request" for the worksheets the Ninth Circuit previously determined were properly withheld on the basis of Exemption 7(A). (Doc. 43-7, Ex. 31.) In Lion's submission, Lion stated that the "evidence closed" in the first and third administrative hearing and that the "only" worksheet relevant to the second administrative proceeding had been released during the first administrative proceeding. "As such, please release the . . . Certificate Worksheets; otherwise, please release them as soon as the administrative investigations and proceedings have been completed." (*Id.*) Lion acknowledged that, at the time, a hearing in connection with the second administrative

18

proceeding had not been held, and that Lion had filed pending motions to reopen the first and third administrative proceedings. (*Id.*)

Four days later, on September 24, 2007, Lion filed, in this court, a motion for relief from Judge Coyle's summary judgment order entered on October 20, 2005. The motion was ultimately denied. *See Lion Raisins, Inc. v. U.S. Dep't of Agric.*, No. 1:05-CV-00062 OWW-SMS, 2008 WL 3834271 (E.D. Cal. Aug. 14, 2008).

Meanwhile, on October 19, 2007, the USDA responded to Lion's supplemental request and continued to withhold the certificate worksheets on the basis of Exemption 7(A). (Doc. 43-7, Ex. 32.) In its written response, the USDA discussed the status of the administrative proceedings:

> Your renewed request for the Certificate Worksheets is denied. . . . In the matter of Inspection and Grading (I&G) Docket No. 01-0001 [the first administrative proceeding], on February 26, 2007, you made a motion to the Administrative Law Judge (ALJ) to reopen the hearing and supplemented it with three additional filings dated April 24, 2007, and September 6, 2007. The ALJ has not issued a decision yet and if the ALJ grants the motion to reopen the hearing then that proceeding would be reopened and the release of the requested information could reasonably interfere.
>
> In I&G 03-0001 [the second administrative proceeding], that matter was remanded to the ALJ for further proceedings. However, the assigned ALJ was a reserve Army officer who is now on a tour to Iraq and the case is to be assigned to another ALJ.
>
> In I&G 04-0001 [the third administrative proceeding], a significant number of the counts in the complaint were dismissed by the ALJ. The remaining counts were litigated and the ALJ issued a decision and order finding that on 33 occasions Lion had engaged in a 'pattern of misrepresentation or deceptive or fraudulent practices in connection with the use of official inspection certificates [and/or] inspection results.' You appealed that decision to the USDA's Judicial Officer (JO). AMS in the response to the appeal asked the JO to review the ALJ's decision to dismiss the counts contained in the

19

original complaint. If the JO determines the ALJ erred in dismissing those counts then it is likely that the previously dismissed counts could be remanded for additional proceedings.
. . . .

While the USDA administrative proceedings have progressed since May 13, 2004, they have not yet concluded, and the requested documents will continue to be withheld pursuant to 5 U.S.C. § 552(b)(7)(A) as their release could reasonably be expected to interfere with the Agency's pending administrative enforcement proceedings.

(*Id.*)  A few weeks later, Lion appealed.  Lion covered the status of the administrative proceedings and argued why it believed that Exemption 7(A) could not be properly invoked:

In I&G Docket Nos. 01-0001 and 04-0001 [the first and third proceeding], the AMS has already presented its case-in-chief and rebuttal evidence in an effort to prove the Respondents' misrepresented USDA inspection results that were initially recorded on Certificate Worksheets. As the [USDA] FOIA Officer pointed out, the Respondents have since filed motions to reopen the hearings. If reopened, the limited purpose of the hearings would be for the Respondents to prove that the AMS misused, suppressed, destroyed and/or altered evidence that the Respondents accurately represented reinspection results. As such, disclosure of the Worksheets could not reasonably interfere with the administrative proceeding unless proving innocence is proper basis of withholding public records (and of course it is not).

It is true that the ALJ dismissed several counts of the complaint in I&G Docket No. 04-0001. However, the AMS had already exchanged exhibits (including Worksheets) for the dismissed counts. In addition, those counts were dismissed as untimely because they were filed after the five-year statute of limitations established by federal law. In the unlikely event that the case is remanded for additional proceedings, the Respondents would immediately seek relief in federal court and would likely prevail. Again, it is unreasonable to expect that disclosure of the Worksheets could interfere with the administrative proceedings.

Finally, on October 11, 2002, a complaint was filed against the Respondents in I&G Docket No. 03-0001. The AMS alleged that the Respondents misrepresented an inspection result related to a single shipment of raisins. It is undisputed that the Worksheet was disclosed by AMS in its rebuttal case in I&G 01-0001.

> In conclusion, the AMS has disclosed every Worksheet with the initial inspection results that the Respondents allegedly misrepresented from 1995 through 2000. It is unreasonable to continue to withhold the remaining Worksheets about which there is no allegation that the Respondents misrepresented the inspection results. Interfering with the Respondents' post-hearing efforts to provide innocent explanations is <u>not</u> a legally recognized justification for withholding the documents.

(Doc. 43-7, Ex. 33) (emphasis in original.)  On May 28, 2008, the USDA responded to the FOIA appeal and continued to withhold the records on the basis of Exemption 7(A). (Doc. 43-7, Ex. 35.)  In its response, the USDA discussed the status of the pending administrative proceedings and upheld the prior determination:

> On September 20, 2007, you submitted a 'Renewed Request for Worksheets' wherein you requested that AMS 'release the . . . Certificate Worksheets; otherwise, please release them as soon as the administrative investigations and proceedings have been completed.' In a letter dated October 19, 2007 . . . [an] AMS FOIA Officer [] denied your renewed request for the Certificate Worksheets and provided the basis for the Agency's denial of those records.
>
> ....
>
> As explained in the letter of October 19, 2007, AMS determined that the release of the records at this time could reasonably be expected to interfere with the Agency's pending administrative enforcement proceedings against Lion Raisins, Inc. You chose to make a motion to reopen the hearing of I&G Docket No. 01-0001 and to appeal the decision of I&G Docket No. 04-0001 to the Judicial Officer. In addition. I&G Docket No. 03-0001 was remanded to the Administrative Law Judge for further proceedings.  After reviewing your request, your appeal, and the file, I concur with the agency's determination. Accordingly, the requested Certificate Worksheets will continue to be withheld pursuant to 5 U.S.C. § 552(b)(7)(A).

(*Id.*)

In the fourth count of Lion's FAC, Lion asserts a FOIA claim for the worksheets.  After Lion filed its FAC, significant progress occurred in the administrative proceedings. Lion has recently submitted a new FOIA request for the worksheets, and, according to

the USDA's reply brief, the USDA will release the worksheets upon payment of the estimated costs and the USDA "no longer asserts Exemption 7(A)."

     **5.**   **<u>Count V — Request For Disposition Records</u>**[7]

On September 20, 2007, after the Ninth Circuit affirmed Judge Coyle's grant of summary judgment, Lion submitted a "new request for worksheet disposition records." (Doc. 43-7, Ex. 31.)[8]  This request states: "please release the disposition schedule for the Worksheets, possibly identified as Standard Form 115, as well as all records, requests, concurrences, instructions, and other documents related to destruction and/or transfer of the Worksheets between the Fresno Field Office, the U.S. Attorney, AMS and any other agencies." (*Id.*)

On October 19, 2007, in a written correspondence to Lion, the USDA briefly addressed this request stating "[y]our request pertaining to the disposition records for the Worksheets is being answered in a separate response." (Doc. 43-7, Ex. 32.) The remainder of the correspondence addresses a separate FOIA request Lion submitted (No. 85-04, the subject of the fourth count).

On December 11, 2007, Lion appealed the USDA's "non-reply" to its request for disposition records. (Doc. 43-7, Ex. 34.) Lion stated that the USDA "FOIA Officer never assigned a FOIA number or replied to [Lion's] request" for disposition records.    Lion

---

[7] **Apparently this request does not have an assigned FOIA number.**

[8] **This "new request" was included in the same correspondence as Lion's "renewed request" for worksheets (which is the subject of Count IV).**

reasserted its request to "release all non-exempt disposition records for the Worksheets requested. At a minimum, the request covers the disposition schedule, Standard Form 115, as well as all records, requests, concurrences, instructions, and other documents related to the destruction and/or any transfer of the Worksheets." (*Id.*)

On May 28, 2008, the USDA issued a written response to Lion's appeal and stated that the request was duplicative of other FOIA requests:

> Your September 20, 2007 request also included a new, separate FOIA request for 'the disposition schedule, Standard Form 115, as well as all records, requests, concurrences, instructions, and other documents related to the destruction and/or any transfer of the Worksheets.' This request is duplicative of other FOIA requests you have submitted to AMS, including FOIA No. 113-07.[9] AMS responded to your request for disposition schedules and other documents relating to destruction and/or transfer of the Worksheets by letter dated November 5, 2007 in response to your FOIA request No. 1 13-07. You were given appeal rights at that time.
>
> In addition, your FOIA Requests No. 96-07 and No. 97-07 were duplicative of this new, separate request. AMS responded to these 96-07 and 97-07 by letter dated August 30, 2007 and provided you with appeal rights at that time.

(Doc. 43-7, Ex. 35.)

In the fifth count of Lion's FAC, Lion asserts a FOIA claim for an alleged "failure to respond to [its] request for disposition records for worksheets."

6.   Count VI — FOIA No. 61-01

On February 8, 2002, Lion submitted a request for certain

---

[9] This FOIA request is not alleged as a substantive basis for any count in the FAC.

investigation and compliance-related records:

> The Raisin Administrative Committee, through its manager is required to report to USDA any alleged violations of the Raisin Marketing Order by raisin packers in the industry. While you can redact the name of the packer if it is not Lion, please provide any and all compliance and investigation files, compliance and audit programs and policies, referral letters or referral reports communicated to USDA, AMS from the RAC to USDA regarding alleged wrongdoing or non-compliance by any raisin packer. If it involves Lion, please do not redact the name. If it involves other packers, you can redact the name, but not the allegation with respect to what the packer allegedly did wrong. This is all for the time frame [of January 1, 1995 to the date of this request].

(Doc. 43-5, Ex. 10.) The request was assigned FOIA No. 61-02.

In response to the request, a search was conducted and on March 28, 2002, the USDA issued a written response stating it had responsive documents, some of which it would release:

> Documents responsive to your request are estimated to include: 1) warning letters and related documents, 2) 6 compliance plans, and 3) 12 compliance cases. Releasable information consists of about 1000 pages, which includes the first two items and part of the third (7 closed or completed compliance cases). Material that we would withhold consists of about 500 pages, which includes part of the third item (5 ongoing compliance cases). The information is being withheld pursuant to § 552(b)(7) of FOIA (5 U.S.C. 552) that exempts from disclosure 'information compiled for law enforcement purposes.' Also, information is being withheld under § 552(b)(4) of FOIA that exempts from disclosure 'commercial information' that is obtained from a person and is privileged or confidential. Additionally, telephone numbers are being withheld pursuant to § 552(b)(6), because release of that information would constitute a clearly unwarranted invasion of personal privacy.

(Doc. 43-5, Ex. 11.) The USDA provided an estimation of the fees for supplying the releasable, responsive records.

In response, on April 11, 2002, Lion requested ten (10) "examples" of the identified "compliance plans" in order to determine whether "compliance plans" were responsive to Lion's

24

request:

> Lion is seeking Federal California raisin marketing order compliance documents. You stated in your response that you have approximately 1,000 documents responsive to said request. In order for Lion to determine that the documents you state are responsive and do not consist of USDA compliance manuals, or RAC compliance manuals etc., it would be appreciated if you could provide to this office, via facsimile, at least 10 examples of the documents that you state are 'compliance plans' documents.

(Doc. 43-5, Ex. 12.)   Lion apparently misread the USDA's written response which stated that only six compliance plans (not ten) existed. In Lion's correspondence of April 11, 2002, Lion also sought to clarify its request:

> In order to clarify what the request is seeking I offer the following: Lion is only interested in internal documentation between the RAC, AMS and/or USDA regarding any alleged violations of the California Raisin Marketing Order by any raisin packer. If the alleged violation involves Lion, please do not redact the name. If it involves any other packer besides Lion, Lion understands that there are privacy concerns and therefore the packer name may be redacted.

(*Id.*) On April 30, 2002, the USDA responded to Lion's request for examples of compliance plan documents by providing "one sample for the period 2001-2002, as developed by the RAC, which consists of 25 pages." The USDA stated that the "rest of the estimated RAC 'compliance plan' documents are similar except that they apply to previous crop years." (Doc. 43-5, Ex. 13.)

After Lion received the sample, Lion submitted a revised request to the USDA on May 14, 2002. Lion wrote:

> After review of said document [the compliance plan], it would be appreciated if you could provide me with a revised estimate of the cost to obtain copies of: 1) warning letters; and 3) compliance cases as outlined in [previous correspondence]. I am omitting the item number "2) compliance plans" as these documents Lion does not

1    wish to receive.

2  (Doc. 43-5, Ex. 14.)  On June 7, 2002, the USDA supplied Lion with

3  a revised fee estimate of $1,171.00. (Doc. 43-5, Ex. 15.).

4        After the USDA received partial payment from Lion, the USDA

5  began to process documents responsive to Lion's revised request.

6  In a correspondence dated August 13, 2002, the USDA informed Lion

7  that documents responsive to the request consisted of approximately

8  700 pages and that, to expedite Lion's receipt of the documents,

9  the USDA intended to release the documents in periodic batches:

> We are currently processing the documents that are
> responsive to your request, which consist of
> approximately 700 pages. Because of the voluminous nature
> of the request and the fact that the documents were
> obtained from our field office, it will take time to
> process the documents. To expedite your receipt of these
> documents, we intend to release batches of documents to
> you approximately every two weeks.

(Doc. 43-6, Ex. 16.)  Ultimately, the USDA released the documents
in six batches.

      In a correspondence dated August 22, 2006, the USDA enclosed
the first batch of documents totaling 169 pages. (Doc. 43-6, Ex.
17.)   The first batch consisted of warning letters and related
documents. The USDA explained that it was redacting/withholding
information pursuant to various exemptions:

> Pursuant to 5 U.S.C. 552 (b)(4) of FOIA, which covers
> trade secrets, I am withholding the following: 1) Names
> of shippers or growers who do business with allegedly
> noncompliant industry members under the California raisin
> marketing order; 2) certificate numbers; 3) production
> information such as acreage and shipment amounts; and 4)
> names of Department of Agriculture inspectors that are
> closely associated with certain raisin plants. Pursuant
> to 5 U.S.C. 552 (b)(6) any information that would
> constitute a clearly unwarranted invasion of personal
> privacy (e.g. social security numbers) was redacted.
> Also, pursuant to 5 U.S.C. 552 (b)(7)(C), information has

26

> been withheld that was compiled for law enforcement
> purposes and could reasonably be expected to constitute
> an unwarranted invasion of personal privacy, which could
> include the names of alleged noncompliant industry
> members, or others associated with such information.
> Pursuant to 5 U.S.C. 552 (b)(7)(E), information was
> withheld that would disclose techniques and procedures
> for law enforcement purposes.

(*Id.*) In a correspondence dated September 24, 2006, the USDA

enclosed the second batch of documents totaling 138 pages. (Doc.

43-6, Ex. 20.)  The USDA explained that the released pages in the

second batch consisted of two "closed" compliance cases, that

further pages would be released from five other "closed" compliance

cases, and that with respect to five active compliance cases, the

USDA was withholding those records pursuant to Exemption 7(A).  The

USDA also noted that, in connection with this second batch, it

redacted/withheld information pursuant to various exemptions:

> Enclosed is the second batch of responsive documents (138
> pages), which contains information from two closed cases.
> There are five remaining closed cases that will be
> forwarded. Pursuant to 5 U.S.C. 552 (b)(4) of FOIA, which
> covers trade secrets, I am withholding the following: 1)
> Names of shippers or growers who do business with
> allegedly noncompliant industry members under the
> California raisin marketing order; 2) certificate
> numbers; 3) production information such as acreage and
> shipment amounts; and 4) names of Department of
> Agriculture inspectors that are closely associated with
> certain raisin plants. Pursuant to 5 U.S.C. 552 (b)(6)
> any information that would constitute a clearly
> unwarranted invasion of personal privacy (e.g. social
> security numbers) has been redacted. Also, pursuant to 5
> U.S.C. 552 (b)(7)(C), information has been withheld that
> was compiled for law enforcement purposes and could
> reasonably be expected to constitute an unwarranted
> invasion of personal privacy, which could include the
> names of alleged noncompliant industry members, or others
> associated with such information. Pursuant to 5 U.S.C.
> 552 (b)(7)(E), information was withheld that would
> disclose techniques and procedures for law enforcement
> purposes.

(*Id.*)

In a correspondence dated October 10, 2002, the USDA enclosed the third batch of responsive documents totaling 172 pages. (Doc. 43-6, Ex. 21.)  The third batch contained the contents of three closed compliance cases. (*Id.*) As to the third batch, the USDA explained that it redacted/withheld information pursuant to various exemptions (which were the same exemptions noted in the USDA's second batch correspondence). (*Id.*)

In a correspondence dated November 18, 2002, the USDA enclosed the fourth batch of responsive documents totaling 252 pages. (Doc. 43-6, Ex. 22.)  The fourth batch contained half of the case information on a specific packer, Custom Raisin Packing, Inc. The USDA noted that it was releasing information that would otherwise be confidential because the information was made public, but some information was redacted/withheld pursuant to various exemptions:

> Enclosed is the fourth batch of responsive documents (252 pages), which contains half of our case information concerning Mr. John Bowersox and Custom Raisin Packing, Inc. (Custom). There are two remaining batches, one consists of the other half of the Custom case and another batch from another case.

> Unlike previous batches, we are releasing some information that would normally be considered confidential. Because Custom is no longer in existence, much of the information that would normally be withheld under 5 U.S.C. 552 (b)(4), trade and financial secrets is releasable to the public. This includes items such as production figures, sales prices, shipment information, and the taxpayer identification number. Much of Custom's and Mr. Bowersox' information was deemed public as it was already released in bankruptcy court.

> However, where necessary, we are reserving the right to withhold certain information in the Custom case. Pursuant to Section 5 U.S.C. 552 (b)(4) of FOIA, trade secrets and commercial or financial information obtained that is personal or confidential, I am withholding information such as bank account numbers and names of businesses that did business with Custom raisin. Pursuant to 5 U.S.C. 552

**(b)(6) any information that would constitute a clearly unwarranted invasion of personal privacy (e.g. social security numbers or phone numbers of those other than Custom) have been redacted. Also, pursuant to 5 U.S.C. 552 (b)(7)(C), information has been withheld that was compiled for law enforcement purposes and could reasonably be expected to constitute an unwarranted invasion of personal privacy, which could include the names of alleged noncompliant industry members, or others associated with such information. Pursuant to 5 U.S.C. 552 (b)(7)(E), information was withheld that would disclose techniques and procedures for law enforcement purposes.**

(*Id.*)

In a correspondence dated December 11, 2002, the USDA enclosed the fifth batch of responsive document totaling 247 pages.  (Doc. 43-6, Ex. 23.) The fifth batch contained the second half of the Custom compliance case. (*Id.*) As to the fifth batch, the USDA noted that information was redacted/withheld pursuant to various exemptions (which were the same exemptions noted in the USDA's fourth batch correspondence).

Finally, in a correspondence dated January 7, 2003, the USDA released the sixth batch of responsive documents totaling 122 pages. (Doc. 43-6, Ex. 24.)  The sixth batch contained the contents of the last closed compliance case.  The USDA noted that some information was redacted/withheld pursuant to various exemptions:

**As with previous batches, we are withholding certain information. Pursuant to 5 U.S.C. 552 (b)(4) of FOIA, which covers trade and financial secrets, I am withholding certain bank account information. Pursuant to 5 U.S.C. 552 (b)(6) any information that would constitute a clearly unwarranted invasion of personal privacy (e.g., personal social security numbers or phone numbers) have been redacted. Also, pursuant to 5 U.S.C. 552 (b)(7)(C), information has been withheld that was compiled for law enforcement purposes and could reasonably be expected to constitute an unwarranted invasion of personal privacy, which could include the names of alleged noncompliant industry members, or others associated with such**

1    information.

2    (*Id.*)

3        After receiving the six batches of documents, Lion appealed on

4    February 21, 2003.   Lion objected to the deletion/redaction of

5    information pursuant to an exemption without any notation as to the

6    kind of information being withheld:

7        I hereby file this FOIA APPEAL . . . on the grounds that
         the Freedom of Information Officer failed to comply with
8        the pertinent provisions of FOIA. There is absolutely no
         indication   that   the   exemption   stated   pursuant   to
9        552(b)(4) of FOIA governing trade and financial secrets,
         are evident and where she simply deletes information and
10       information and writes (b)(4) that fails to comply with
         the Freedom of Information Act since it does not indicate
11       what the information was in order to properly address
         whether or not the exemption is properly applied. The
12       same is true with respect to the FOIA Officer's (b)(6)
         exemption and (b)(7)(C) exemption listed in all of the
13       documents where deletions had occurred.

14       When something is redacted, there must be some notation
         or indication as to why it is redacted, indicating the
15       type   of   information   (not   just   code   sections   of
         exemptions) being redacted.
16
17       I  believe  that  the  FOIA  Officer  must  indicate  with
         respect to each redaction claimed, sufficient information
18       addressing what was redacted, and not simply designate an
         exemption code section.

19   (Doc. 43-6, Ex. 25.) At the time Lion filed its FAC on August 26,

20   2008, the USDA had not issued a written response to this appeal.

21   Accordingly, the sixth count in Lion's FAC alleges that the USDA

22   failed to respond to Lion's appeal.   After the filing of the FAC,

23   however, the USDA responded to Lion's appeal.

24       The USDA issued a written, detailed response to the appeal

25   dated March 9, 2009. (Doc. 43-6, Ex. 26.)   The USDA's response

26   addressed Lion's arguments, explained what information was being

27   redacted/withheld  and  why,  and  released  additional  documents.

28

                                   30

After the USDA issued this detailed response to Lion's appeal, Lion has not since amended its FAC.

    **7.**    <u>Count VII – Refusal To Provide Access To Original Records</u>

    In four separate written submissions, all dated October 26, 2005, Lion requested physical access to original USDA records.

    The first request, assigned FOIA No. 22-06, sought "physical access" to documents that contained the "Original (in living color) signatures" of fourteen different USDA inspectors who inspected raisins at Lion. (Doc. 43-7, Ex. 37.)  The second request, assigned FOIA No. 23-06, sought "physical access" to "Original Blue Tissue Copy (in living color) USDA Certificates for product inspected at Lion Raisins during the years of 1995 through 2005 as stored by the USDA." (Doc. 43-7, Ex. 38.)  The third request, assigned FOIA No. 25-06, sought "physical access" to "Original (in living color) USDA Line Check Sheets for product inspected at Lion Raisins during the years of 1995 through 2005 as stored by the USDA." (Doc. 43-7, Ex. 39.)  Finally, the fourth request, assigned FOIA No. 26-06, sought "physical access" to "Original (in living color) Voided USDA Certificates for product inspected at Lion Raisins during the years of 1995 through 2005 as stored by the USDA." (Doc. 43-7, Ex. 40.) With respect to each request, Lion stated that "before granting this FOIA request please inform us of the costs that may be involved with such a request."

    On January 9, 2006, the USDA informed Lion, in an "interim" response, that it would need an additional ten days to respond. (Doc. 43-7, Ex. 41.) On February 10, 2006, in another "interim" response, the USDA explained that it identified approximately

15,000 documents in two different locations and provided an estimate of the cost:

> We have identified approximately 15,000 documents responsive to your request. The records you have requested are normally maintained by the Fruit and Vegetable Programs. However, due to an ongoing investigation, a large portion of the requested records are currently in the possession of the Compliance and Analysis Programs. Since you have requested physical access to the records for your inspection, each program area will need to be contacted to arrange a mutually convenient time for such inspection.

> . . . .

> Under the FOIA [5 U.S.C. § 552(a)(4)(A)], fees may be charged for the search and review of requested documents. The USDA fee schedule for FOIA requests can be found in 7 C.F.R. Part 1, Subpart A, Appendix A. Since the requested records are in the possession of two separate programs, a separate search and review will need to be performed by each.

(Doc. 43-7, Ex. 42.) For the two separate searches, the USDA broke down the fee estimation as follows:

| | |
|---|---|
| Search time: | 20 hours X $36.16/hr = $723.20 |
| Professional review time: | 40 hours X $60.97/hour = $2,438.80 |
| Search time: | 143 hours X $14.OO/hour = $2,002.00 |
| Professional review time: | 40 hours X $41.47/hour = $1.658.80 |
| | Total = $6,822.80 |

(*Id.*)  The USDA requested that Lion pay the estimated fee within thirty (30) days. The USDA asked for the payment in full "before the [USDA] continues to process this request." (*Id.*)

On March 27, 2006, Lion appealed and argued that the costs were excessive. (Doc. 43-7, Ex. 43.) Lion stated that the documents were previously produced and that searching for them again should not be burdensome:

> On March, 22, 2006, I contacted Ms. [Zipora] Bullard [a
> USDA FOIA officer] for clarification as to why the cost
> for 'physical access' was so high when hard copies of the
> same documents Lion seeks physical access to were
> previously produced in an earlier FOIA request. Ms.
> Bullard offered to verify the costs with program manager,
> Mike Blazejak. Thereafter, Ms. Bullard contacted me by
> telephone and informed me that Mr. Blazejak confirmed the
> costs were required and must be paid . . . because
> someone would be required to access the files to
> facilitate our request for 'physical access.'

> Lion appeals the February 10, 2006 Interim Response. This
> appeal is based on the grounds that the costs associated
> with further processing of the requests are unreasonably
> excessive, in that a copy of the requested documents
> should currently exist and be available for AMS's use in
> identifying documents responsive to Lion's October 26,
> 2005 requests. AMS's [r]equirement for pre-payment has
> the same effect as an outright denial, in that if Lion
> does not pay the required $6,822.80, AMS will deny Lion
> physical access to the requested documents.

(*Id.*) The USDA issued a written response to Lion's appeal dated

June 7, 2006. (Doc. 43-7, Ex. 44.) In its response, the USDA

addressed Lion's arguments and explained the basis for the fees:

> Your appeal is based on the grounds that, in your
> assessment, the costs associated with processing this
> request are unreasonably excessive. You also assert in
> your appeal that the requirement to pay the full
> estimated fee in advance has the same effect as an
> outright denial. We have reviewed your appeal and have
> determined to uphold the requirements in the interim
> response dated February 10, 2006.

> The estimated costs are based on the estimated amount of
> time it will take to provide you the information as
> described in you[r] request. The point was also raised in
> your appeal, that copies of this information were
> previously produced in response to an earlier request. In
> the normal process of responding to a FOIA request, after
> copies of the requested information have been made, the
> original documents are returned to the files from which
> they were retrieved. It is possible that the response to
> a subsequent request may be facilitated based on the
> results of the earlier request if identical information
> is sought and only requires the production of additional
> copies of the same documents. In this particular case,
> you have not requested additional copies of the
> information. Your request is for access to the original

33

documents themselves. Since the original documents you
seek have been returned to files, a complete search and
retrieval process will need to be performed in order to
locate and produce the requested information. Since the
original documents are sought, it is not possible to
facilitate this process based on the efforts and results
from a previous request. Furthermore, due to the age of
the information, some of the records have been moved from
the office filing system and are now located in storage.
Additional time will be required for the search and
retrieval of any information from records located in
storage.

(*Id.*) The USDA also explained why the fees were requested in
advance:

Under the FOIA [5 U.S.C. § 552(a)(4)(A)], fees may be
charged for search, review, and duplication of requested
documents in order to recover the cost of providing the
information. The fee schedule for FOIA requests can be
found in 7 C.F.R. Part 1, Subpart A, Appendix A. The
request for payment of these fees does not constitute a
denial.

5 U.S.C. §552(a)(4)(A)(v) states: 'No agency may require
advance payment of any fee unless the requester has
previously failed to pay fees in a timely fashion, or the
agency has determined that the fee will exceed $250.'

7 C.F.R. Part 1, Subpart A, Appendix A, Section 8(d)
states: 'In instances where a requester has previously
failed to pay a fee, an agency may require the requester
to pay the full amount owed, plus any applicable interest
as provided in section 9 of this appendix, as well as the
full estimated fee associated with any new request before
the agency begins to process that new or subsequent
request.'

In a letter, dated April 13, 2005, a representative of
Lion Raisins, Inc. requested information under the FOIA
and was assigned as AMS FOIA 72-05. The responsive
documents along with a letter requesting payment were
sent on June 22, 2005. A courtesy letter, dated August 4,
2005, was sent requesting payment. On August 31, 2005, a
representative of Lion Raisins submitted two additional
requests for information. In accordance with 7 C.F.R.
Part 1, Subpart A, Appendix A, Section 8(d), the two
requests were put on hold. An additional letter, dated
September 12, 2005, was sent re-requesting payment for
AMS FOIA 72-05. On November 21, 2005, a check for FOIA
72-05 was finally received. The two pending requests,
submitted in August, were processed as FOIA Nos. 20-06

34

and 21-06.

In accordance with 5 U.S.C. § 552(a)(4)(A)(v) and 7
C.F.R. Part 1, Subpart A, Appendix A, Section 8(d), the
payment of the full estimated fee associated with this
request is being required before processing based on the
payment history for AMS FOIA 72-05.

(Doc. 43-7, Ex. 44) (alteration in original.)  The USDA informed
Lion that if it wished to continue processing its request for
physical access, "please send a check payable to the U.S. Treasury
for the amount of $6,822.80 in accordance with the instructions in
the interim response, dated February 10, 2006, within 30 days of
receipt of this letter." (*Id.*)  Lion did not pay the requested fees
or agree to pay them.  The USDA ceased processing the request.

    In the seventh count of Lion's FAC, Lion asserts a FOIA claim
on the grounds that the estimated costs were unreasonably excessive
and tantamount to an outright denial.

    8.   Count VIII – "Bad Faith"

    In the eighth count of Lion's FAC, Lion asserts a stand alone
claim for "bad faith" on the grounds that they USDA responses to
its various FOIA requests were made in bad faith.

    9.   Count IX – Violation of the Administrative Procedure Act

    In the ninth count of Lion's FAC, Lion incorporates its
allegations with regards to its FOIA requests and the USDA's
responses thereto (Count I through VII) and asserts that the
"USDA's actions were and continue to be arbitrary and capricious
under the Administrative Procedure Act, 5 U.S.C. § 551."

                    III. STANDARD OF DECISION

    The FOIA "accords 'any person' a right to request any records
held by a federal agency. No reason need be given for a FOIA

35

request, and unless the requested materials fall within one of the Act's enumerated exemptions, see § 552(a)(3)(E), (b), the agency must 'make the records promptly available' to the requester, § 552(a)(3)(A). If an agency refuses to furnish the requested records, the requester may file suit in federal court and obtain an injunction 'order[ing] the production of any agency records improperly withheld.' § 552(a)(4)(B)." *Taylor v. Sturgell*, ___ U.S. ___, 128 S.Ct. 2161, 2167 (2008) (alteration in original) (internal citation omitted).

"It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim." *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1188 (N.D. Cal. 2006). "Unlike the typical summary judgment analysis," however, "in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996). Rather, the question is whether "an adequate factual basis" exists "upon which to base [a] decision" on the FOIA claim at issue. *Id.*; *see also Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1040 (9th Cir. 1999). Government affidavits can supply the requisite factual basis. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008).

The precise nature of the inquiry on summary judgment, and whether an adequate factual basis exists, depends on the issue being litigated.

In cases "[w]here the government withholds documents pursuant to one of the enumerated exemptions of FOIA 'the burden is on the agency to sustain its action.'" *Lion Raisins*, 354 F.3d at 1079

(*citing* 5 U.S.C. § 552(a)(4)(B)). "If the agency supplies a reasonably detailed affidavit describing the document[s] [withheld] and facts sufficient to establish an exemption, then the district court need look no further in determining whether an exemption applies." *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979).  Ordinarily, the agency affidavit(s) identify the document(s) withheld, specify the FOIA exemption(s) claimed, and explain why each document falls within a claimed exemption. *Lion Raisins*, 354 F.3d at 1082.  This submission is typically referred to as a *Vaughn* index. *Id*.  The affidavit(s) "must be detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption." *Id*. (internal quotation marks omitted).

In cases where the agency's search for responsive records is at issue, the agency must demonstrate "that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (internal quotation marks omitted).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Id*.  (emphasis and internal quotation marks omitted).  The "adequacy of the search . . . is judged by a standard of reasonableness" and to demonstrate the "adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id*. (internal quotation marks omitted); *see also Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995).  While an ultra-thorough search is not

required, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal quotation marks omitted).   For purposes of summary judgment, the agency affidavits are sufficient "if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." *Zemansky*, 767 F.2d at 573 (internal quotation marks omitted).   In assessing the adequacy of the search, when the agency is moving for summary judgment, the facts are construed "in the light most favorable to the requestor." *Citizens Comm'n on Human Rights*, 45 F.3d at 1328.

## IV.   DISCUSSION AND ANALYSIS

**A.   Count I — FOIA Request No. 97-07**

Through FOIA Request No. 97-07, Lion seeks USDA disposition plans for the "FR" and "RAC" series of forms.   Lion refers to these disposition plans as "disposition schedules" in its moving papers. The USDA has not claimed that it is withholding these disposition plans or schedules pursuant to any exemption.   Whether an exemption is properly invoked is not the issue.   The issue is the adequacy of the USDA's search for responsive records.

Lion believes disposition plans "should" exist for these series of forms because they, according to Lion, are required by federal law and the USDA released a disposition plan for another series of form (the "F&V" series). In response, the USDA claims that it conducted a reasonable search, both initially and after

Lion's FOIA appeal, and the USDA produced what it found.

To demonstrate the purported adequacy of the search(es) for responsive records, the USDA submits two declarations.  One declaration is from Michael Blazejak, an Agricultural Commodity Grader of the Inspection and Standardization Section of the USDA's AMS.  The other declaration is from Maria Sanders, the FOIA Officer for the USDA's AMS.  These declarations fail to create a sufficient factual record upon which to determine the adequacy of the search for responsive records.

In a FOIA case, sufficient declarations describe "what records were searched, by whom, and through what process." *Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (internal quotation marks omitted); *see also Zemansky*, 767 F.2d at 573 (noting that to be sufficient for summary judgment purposes, the affidavits regarding the agency's search must be "relatively detailed in their description of the files searched and the search procedures").  Starting with Blazejak, his declaration is deficient in a number of respects.

With respect to the initial search, Blazejak does not specify what records were searched. Instead, he states that another individual, Gabriel Mangino, an Agricultural Marketing Specialist of the Inspection and Standardization Section, searched unspecified "records." Not only does Blazejak fail to specify which records were searched, Blazejak provides no description of the process or procedure employed by Mangino to search for responsive records – all Blazejak states is that Mangino made a telephone call to an unnamed person in the Processed Products Branch ("PPB") of the AMS

39

and Mangino conducted some unspecified "research." There is no declaration for Mangino explaining what records he searched and what process or procedure he followed. *See Maydak v. U.S. Dep't of Justice*, 362 F. Supp. 2d 316, 326 (D.D.C. 2005) (concluding that the agency's submission was insufficient to demonstrate the adequacy of a search; noting, among other things, that the agency "has identified the individuals who conducted the searches but has not proffered their declarations explaining their searches").

According to Blazejak, another individual, Mickey Martinez, the "Officer-in-Charge," helped conduct the second search for responsive records in response to Lion's appeal.  Here too Blazejak's declaration is deficient.  Blazejak does not explain what files Martinez searched.  Instead, Blazejak states that Martinez was "aware that responsive records could be included in paper files."  Not only are these "paper files" unspecified, there is no affirmative statement in Blazejak's declaration that Martinez or Blazejak even searched these paper files.  Similarly, Blazejak states that Martinez and Blazejak reviewed "documents," but Blazejak does not explain in reasonable detail what those documents were or what process or procedure was utilized that lead to the selection of those particular "documents" for review.  There is no declaration from Martinez himself explaining what files he searched and what method or procedure he employed.

After Blazejak covers Mangino's and Martinez's involvement, in a separate paragraph of his declaration, Blazejak states in a conclusory fashion that the searches performed were "reasonable and thorough" and the "AMS searched the paper files under the file code

dealing with retention policies, found all responsive records, and released those records in full."  This statement does not specify who at the "AMS" searched the paper files; and Blazejak does not explain why the file code dealing with retention policies is the only code file likely to contain responsive records. *See Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001) ("The FOIA requires a reasonable search tailored to the nature of the request.").

In addition to these deficiencies, Blazejak does not mention whether, or what, search terms or key words were utilized by the USDA. *See Hiken v. Dep't of Defense*, 521 F. Supp. 2d 1047, 1054 (N.D. Cal. 2007) ("The disclosure of search terms and a declarant's assurances that the search covered all relevant files may be helpful in evaluating the adequacy of the search"); *Maydak*, 362 F. Supp. 2d at 326 (concluding that the agency's submission was insufficient where, among other things, it provided "no information about the search terms and the specific files searched for each request") (emphasis omitted).[10]  Blazejak also fails to specify, with reasonable particularity, the scope of the search for responsive records (perhaps this is because individuals besides Blazejak, who did not supply their own declarations, searched for responsive records). *See Rugiero*, 257 F.3d at 547 (recognizing that agency affidavits must provide "reasonable detail of the scope of

---

[10] There is no clear indication in any USDA declaration as to whether the USDA used a computer in its search for responsive records or whether it searched electronic records in response to Lion's FOIA requests.

41

the search"); *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (recognizing that agency affidavits must "explain in reasonable detail the scope and method of the search conducted by the agency"). Finally, at times, Blazejak's declaration suggests that he is simply relaying hearsay (i.e., what others have told him) and that he lacks personal knowledge of Mangino and Martinez's efforts.

As for Sanders's declaration, she briefly discusses the initial and subsequent search. Sanders states that, in response to the FOIA request, the "AMS FOIA Officer contacted the Fruit and Vegetable Program, Processed Products Branch and spoke with staff members knowledgeable of the records retention policies that apply to AMS inspection records. The initial response was prepared with the assistance of Michael Blazejak . . . ." Sanders provides no meaningful information on what records were searched, what method or procedure was employed to search for responsive records, whether, or what, search terms were utilized or the scope of the search. Sanders notes that a second search was conducted after Lion's appeal, but Sanders provides no specifics on the search.

Given the deficiencies in Blazejak and Sanders's declaration, the current record does not provide a sufficient basis upon which to conclude that the USDA conducted a search reasonably calculated to uncover all relevant documents. Summary judgment in favor of the USDA is for these reasons inappropriate. This conclusion is bolstered by evidence which calls into question the USDA's good faith in this FOIA action. *See Rugiero*, 257 F.3d at 543 (recognizing that "bad faith" in a FOIA case may arise from "the agency's conduct in the FOIA action").

1    In the FOIA appeal process, in Blazejak's and Sanders's
2  declaration, and in its summary judgments papers, the USDA has
3  avoided the main questions raised by Lion in its FOIA appeal and
4  pressed again by Lion in summary judgment.  First, why is there a
5  disposition plan for one series of form – the F&V series – but not
6  for the FR and RAC series of forms? Second, if federal regulations
7  require record schedules for the FR and RAC series of forms, why
8  were they not located and produced?

9    At no point in the FOIA appeal process did the USDA explain
10 why a search for responsive records generated a disposition plan
11 for the F&V series of forms but not for the FR and RAC series of
12 forms.  The declarants do not answer this question either, and the
13 USDA has not answered this question in their summary judgment
14 briefing.  In the appeal process, in the statements of its
15 declarants, and its summary judgment briefing, the USDA has not
16 affirmatively and directly stated that, while a disposition plan
17 exists for the F&V series of form, specific disposition plans for
18 the FR and RAC series of forms do not exist or that the USDA was
19 unable to locate them with reasonable efforts.  Even though the
20 USDA is not obligated to respond to each and every argument or
21 point raised by a FOIA requester, the USDA's consistent
22 unwillingness to confirm or even discuss, in a straightforward
23 fashion, the existence or non-existence of the FR and RAC series of
24 forms, or the USDA's inability to find them, appears evasive and
25 not reflective of good faith.  *Compare Defenders of Wildlife v.*
26 *U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 10 (D.D.C. 2004)
27 (government declaration considered sufficient when it addressed why

28

**43**

the government agency did not have a particular document – a "final version of a severance agreement" – requested by the plaintiffs; the declarant stated there was no evidence that the agency had received the final agreement and it was "normal for [the] agency to view only drafts of such an agreement").

The USDA did not address Lion's argument that federal regulations require the USDA to maintain these disposition schedules, in the FOIA appeal process, in the declarations of Blazejak or Sanders, or in the USDA's summary judgment briefing. Instead of addressing the issue, the USDA argues that the "question whether the agency should have created other records is irrelevant under FOIA" because the FOIA imposes no duty on the agency to create records that do not exist. This argument, as the USDA's response to Lion's FOIA appeal and Blazejak's and Sanders's declarations, ignores the question of whether federal regulations actually require the creation of these records. This argument assumes that the regulations do require the creation of these records and that the USDA has failed to create them, but this failure (according to the USDA) is "irrelevant" in this case because *FOIA* does not require the USDA to create documents. While it is true that the FOIA does not require the USDA to create documents, the USDA's apparent unwillingness to respond to Lion's argument and affirmatively state, either way, the USDA's position on whether the federal regulations require the creation of these documents and whether such documents exist raises questions about the USDA's good faith.

The USDA's affidavits are presently insufficient to meet its

1  burden at the summary judgement stage.[11]   When, as here, the

2  adequacy of the search remains in doubt on summary judgment, courts

3  have permitted the FOIA requester to use narrow interrogatories or

4  depositions, or required the government agency to supply

5  supplemental declarations, to gather additional relevant

6  information. *See Kozacky & Weitzel, P.C. v. United States*, No. 07

7  C 2246, 2008 WL 2188457, at *7 (N.D. Ill. Apr. 10, 2008)

8  (permitting the use of interrogatories concerning the "nature and

9  adequacy of the IRS's search(es)"); *El Badrawi v. Dep't of Homeland*

10 *Sec.*, 583 F. Supp. 2d 285, 321 (D. Conn. 2008) (permitting "limited

11 discovery as to the adequacy" of the searches in the form of

12 depositions, including, among others, a deposition of an "employee

13 most knowledgeable about the whereabouts" of a missing file);

14 *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1130

15 (permitting a supplemental declaration "regarding the adequacy of

16 the search").

17      At oral argument on the cross-motions for summary judgment,

18 Lion stated its preference for a limited-scope deposition of the

19 custodian of records or an appropriate USDA representative to

20 determine whether a disposition plan or schedule for the FR and RAC

21 series of forms exists and, if so, why it has not been produced.

22 At oral argument, both parties expressed a willingness to "get to

23

24

25

26      [11] Although Lion has moved for summary judgment on this claim,
Lion has also failed to sustain its burden of demonstrating that
27 summary judgment in its favor is warranted. Whether the USDA
conducted a reasonable search remains in dispute.

28

1    the bottom of this."[12]   If disposition plans or schedules for the

2    FR and RAC series of forms do not exist, this eviscerates Lion's

3    FOIA claim (as no search can uncover non-existent documents).   If

4    they do exist, the USDA can moot Lion's FOIA claim by turning the

5    nonexempt documents over.   *Papa v. United States*, 281 F.3d 1004,

6    1013 (9th Cir. 2002) (recognizing that the production of all

7    nonexempt documents, "however belatedly," moots a FOIA claim)

8    (internal quotation marks omitted); *Yonemoto v. Dep't of Veteran

9    Affairs*, 305 F. App'x 333, 334 (9th Cir. 2008) (same).

10        In order to create a sufficient factual record regarding the

11   adequacy of the search, Lion may engage in *limited* discovery via

12   deposition.   This is not a license to engage in a fishing

13   expedition or to seek information about the debarment proceedings.

14   The objective of this limited discovery is to ascertain whether a

15   disposition plan or schedule exists for the FR and RAC series of

16   forms; whether, if such documents exist, there is any justification

17   for their non-production (if the USDA seeks to withhold them); and

18   for additional facts regarding the search for responsive documents.

19   Lion must limit its questioning accordingly.   Within ten (10)

20   calendar days following service of this order, the USDA and Lion

21   shall meet and confer as to the appropriate deponent(s).   After the

22   deposition(s), Lion and USDA shall submit a joint written report on

23   whether a controversy still remains as to this FOIA request.[13]

24   _____

25       [12] The parties have been to the Ninth Circuit twice before in
26   FOIA litigation.

27       [13] In connection with this FOIA claim, the USDA is not
28   asserting an exemption which would justify the withholding of

1    On the present record, neither the USDA nor Lion is entitled
2    to summary judgment.   The cross-motions on Count I are DENIED
3    without prejudice.

4    **B.   Count II – FOIA Request No. 96-07**

5    Through FOIA Request No. 96-07, Lion seeks "transfer and
6    destruction" records for inspection documents. The USDA has not
7    claimed that it is withholding these records pursuant to any
8    exemption.   Whether an exemption is properly invoked is not at
9    issue. The issue is the adequacy of the USDA's search for
10   responsive records.

11   The USDA's response to Lion's request is that no responsive
12   documents exist. Lion argues that federal regulations require the
13   creation of such documents and "it strains credulity" to believe
14   that they do not exist. The USDA contends that it conducted a
15   reasonable search, both initially and in response to Lion's FOIA
16   appeal, and no responsive documents were uncovered. The USDA
17   submits the declarations of Blazejak and Sanders to demonstrate the
18   purported adequacy of the search.    Both declarations are
19   insufficient.

20   As for the first search, Blazejak does not specify what
21   records were searched or by what methods.   Blazejak states that

22   _____

23   documents. In FOIA cases, generally "discovery is limited because
24   the underlying case revolves around the propriety of revealing
     certain documents." *Lane*, 523 F.3d at 1134. Lion's FOIA claim does
25   not, however, revolve around the propriety of revealing certain
     documents. This is not a case where the discovery being sought or
26   permitted is geared to produce "precisely what defendants maintain
27   is exempt from disclosure." *Id.* at 1135 (internal quotation marks
     omitted).  Even so, the discovery permitted here is limited.

28

Mangino performed a search of "AMS records" without identifying the records or how the "AMS records" were searched. Blazejak does not mention whether search terms were utilized and he does not discuss, in any detail, the scope of the search.

According to Blazejak, it was determined that no responsive documents exist because Mangino spoke with some unspecified person at the PPB office in Fresno and Mangino "was informed [by this unspecified person] that in accordance with current policies and procedures, inspections documents are destroyed after their specified retention period" and "in accordance with the policies and procedures, it is not required that new 'disposition' records be created to document the destruction of these documents." Blazejak continues "[t]herefore, because records reflecting the disposition (e.g., destruction) of records pursuant to a retention schedule are not required, AMS concluded that there are no documents responsive to this request."[14] This portion of Blazejak's declaration appears to contain two levels of hearsay (what the unspecified person told Mangino and what Mangino then told Blazejak). The USDA does not provide a copy of the "policies and procedures" that purportedly indicate that a document need not be created to record the destruction of inspection documents, nor does the USDA identify the person who apparently relayed this information verbally to Mangino. Blazejak's declaration is also

[14]   The USDA's recognition that it has destroyed documents pursuant to a "retention schedule" adds some weight to Lion's belief that there is a disposition plan or schedule for the FR and RAC series of forms.

completely silent as to whether anybody searched for the "transfer" records, i.e., the records reflecting "what agency had custody" of the inspection documents from 1995 to the date of Lion's FOIA request.    As to the first search, Blazejak's declaration is insufficient.

As to the second "search," Blazejak declaration is similarly deficient.  Instead of actually searching for destruction records, Blazejak looked only at the "policies and procedures for the disposition of the inspection records" and "concluded that the creation of a record regarding the destruction of inspection documents was not required." Blazejak then called the PPB office in Fresno and "verified [by talking with an unidentified person] that these procedures were being followed and that no such records had been created and therefore no such records existed."  Blazejak also contacted the "Office of the General Counsel and the Departmental Records Officer to confirm [Blazejak's] understanding of the records retention process. Accordingly, AMS again concluded that no responsive records exist."

Blazejak's declaration demonstrates that he did not search for the destruction records Lion requested; rather he looked only at "policies and procedures regarding," and made telephone calls to various individuals to determine and confirm, whether a document is required to record the destruction of inspection records. Even assuming that the USDA's "policies and procedures" (whatever they are) do not require the USDA to create a document to record when another document is destroyed, this does not mean that such destruction records were never generated from 1995 to the time of

**49**

Lion's FOIA request.  Not only did Blazejak fail to look for any destruction records during the second "search," Blazejak makes no mention of whether he searched for the transfer records Lion initially requested.

Sanders's declaration is not helpful. Sanders does not provide any information on what records were searched, what procedures or methods were utilized, the search terms utilized (if any), or the scope of the search.  Her declaration is devoid of details on the searches for responsive records.

Based on deficiencies in Blazejak's and Sanders's declaration, the current record does not provide a sufficient basis to conclude that the USDA conducted a search reasonably calculated to uncover all relevant documents.  At this time, summary judgment for the USDA is inappropriate.  This conclusion is bolstered by evidence that calls into question the USDA's good faith in responding to Lion's FOIA request.

In the FOIA appeal process, in Blazejak's and Sanders's declaration, and its summary judgment briefing, the USDA has ignored Lion's main argument in its FOIA appeal and raised again in its summary judgment briefing.  If federal regulations require the creation of documents to record when documents are destroyed, why are there no destruction records?

The USDA did not address this argument in the FOIA appeal process.  Neither Blazejak nor Sanders address this argument in their declarations.  While Blazejak states that unspecified USDA "policies and procedures" do not require the creation of destruction documents, Blazejak stops short of stating that *federal*

*regulations* do not require the creation of these documents.  In its summary judgment briefing, the USDA did not address whether federal regulations require the creation of destruction records. Rather, without discussing the matter, the USDA argues that whether they should have created documents is irrelevant as the *FOIA* does not require the USDA to create documents.  This argument skirts the issue.  It was not until oral argument on the cross-motions for summary judgment that the USDA squarely stated its position: it has never interpreted the federal regulations as requiring the creation of a document to record the destruction of another document.  The USDA's past unwillingness to address Lion's argument head on, Blazejak's avoidance of the issue, and the USDA's belated revelation of its legal position during oral argument, raise questions about the USDA's good faith.

The USDA's affidavits are insufficient to meet its burden at the summary judgement stage.  More information is needed as specified above.

At oral argument, Lion requested limited-scope discovery; a narrowly-focused deposition of a custodian of records or an appropriate USDA representative regarding the existence of destruction records and transfer records (which Lion also described as "chain of custody" records).  If these documents do not exist, this eviscerates Lion's FOIA claim and if they do exist, the USDA can moot Lion's FOIA claim by producing them.

In order to create a sufficient factual record as to the adequacy of the search, Lion may engage in *limited* discovery.  Lion must confine its discovery questions to determining whether

destruction records and transfer records exist and, if they exist, any justification for their non-production, and any additional facts addressing the search for such records.   Within ten (10) calendar days following service of this order, the USDA and Lion shall meet and confer as to the appropriate deponent(s).   After the deposition(s), Lion and the USDA shall submit a joint written report on whether a controversy still remains as to this FOIA request.

On the present record, neither the USDA nor Lion is entitled to summary judgment as the adequacy of the search remains in dispute.   The cross-motions on Count II are DENIED without prejudice.

C.   Count III – FOIA Request No. 184-01

Through FOIA Request No. 184-01, Lion seeks all the "line check sheets and memorandum reports of inspection" it requested. The USDA has not claimed that it is withholding any responsive records pursuant to an exemption.   The issue is the adequacy of the USDA's search for responsive records.

Notwithstanding the USDA position that it has produced all responsive documents, Lion argues that additional memorandum reports of inspection and line check sheets "should exist." In its summary judgment papers, Lion's reiterates many of the arguments it made in its FOIA appeal.   Lion further notes that, on several successive occasions, the USDA has supplied responsive documents and the "fact that records keep showing up is proof enough that the

search was unreasonable." The USDA denies this.[15] Lion also attacks the adequacy of the search, arguing that the USDA's declarations fail to specify where searches were conducted.

Starting with the memorandum reports of inspection, the evidence reveals some inconsistency or confusion as to number of potentially responsive documents. Originally, in April 2004, the USDA supplied memorandum reports of inspection to Lion after the Ninth Circuit's decision.[16] Lion submits evidence that the USDA's production in April 2004 contained 494 memorandum reports of inspection. (Doc. 47-2 at 27; Green Decl. ¶ 46.) In its initial round of declarations, the USDA did not specify how many memorandum reports of inspection it produced in April 2004. However, in connection with its reply brief, the USDA submitted a supplemental declaration from Trykowski which states that the USDA produced approximately 643 memorandum reports of inspection in April 2004. Regardless of whether Lion's number (494) or Trykowski's number (643) is utilized, both create problems when they are compared to

---

[15] Lion's argument that "records keep showing up" appears misdirected to the wrong time period. Count III of Lion's complaint deals with the USDA's response to Lion's supplemental production request in April 2007. *See* FAC ¶ 52. To the extent responsive documents surfaced *prior* to Lion's April 2007 supplemental production request, this does not call into question the adequacy of the USDA's search *after* Lion's April 2007 supplemental production request.

[16] The Ninth Circuit ordered the production of USDA-retained "line check sheets." However, since memorandum reports of inspection are attached to line check sheets, the USDA apparently decided to produce the corresponding memorandum reports of inspection as well.

1  the number of memorandum reports that Trykowski claims (in his
2  initial declaration) were discovered in a *subsequent* search after
3  the USDA's April 2004 production.

4    Following Lion's April 2007 supplemental production request
5  (Doc. 43-5, Ex. 6) for line check sheets and memorandum reports of
6  inspection, Trykowski claims that a "forty man-hour[]" search was
7  conducted and approximately "575" memorandum reports of inspection
8  were located.  An analyst determined that twenty-four (24) of these
9  memorandums had not been previously produced in April 2004.

10    Using Trykowski's numbers, it is unclear why 643 memorandum
11 reports of inspection were initially produced in April 2004 and yet
12 a subsequent "forty man-hour[]" search uncovered substantially less
13 memoranda; only 575.  The fact that the subsequent "forty man-
14 hour[]" search for memoranda yielded substantially less memoranda
15 (only 575), compared to the original production of memoranda (643),
16 calls into question the adequacy of the subsequent search for
17 memoranda.  Using Lion's number, if 494 memorandums were produced
18 by the USDA in April 2004 and the "forty man-hour[]" search
19 uncovered 575 memoranda, then the analyst should have uncovered
20 much more than twenty-four (24) previously unproduced memoranda.
21 There may be a reasonable explanation for this.  The numbers before
22 the court, however, create confusion.

23    Apart from the numerical inconsistencies, Trykowski does not
24 provide the requisite information regarding the search for
25 memorandum reports of inspection and line check sheets in
26 connection with Lion's supplemental production request.  Trykowski
27 claims that, after receiving the supplemental production request in

28
**54**

April 2007, he "instructed" three unspecified members of the Compliance Staff in Fresno to search for responsive records. Trykowski does not explain what records were searched or by what process.  No mention is made of whether, or what, search terms were utilized, and the scope of "forty man-hour[]" search remains unclear.

Following this search, the USDA produced four line check sheets and twenty four (24) memorandum reports of inspection.  Lion then submitted its June 2007 FOIA appeal.  Following this appeal, another search was conducted; however Trykowski does not specifically describe the search.  Trykowski explains that he "instructed a Fresno-based Compliance Officer to once again review the files that had been thoroughly searched again in April 2007 to ensure no files had been missed in the original search." Trykowski does not describe these "files," what they consisted of, or what years they covered.  Trykowski explains that the "Compliance Officer confirmed to me that all pertinent boxes had been searched."  This conclusory statement fails to specify who searched the boxes, does not identify the boxes, nor how the search was conducted.  Trykowski also does not explain what constitutes a "pertinent" box so as to distinguish it from a non-pertinent box. The scope and content of this search remains unclear.

The only other declarant who discusses these searches – Sanders – does not provide any detailed information. Sanders simply mentions that searches were conducted but not does describe any specifics on the search following Lion's April 2007 supplemental production request or Lion's June 2007 FOIA appeal.

1     The USDA's declarations are insufficient to demonstrate that
2  the USDA conducted a search reasonably calculated to uncover all
3  relevant documents and warrant summary judgment in favor of the
4  USDA.   Out of fairness, Trykowski does attempt to address the
5  arguments raised by Lion in its FOIA appeal and repeated in Lion's
6  motion.   For example, Lion argues that there should be memoranda
7  from 1997-1999, but none were produced.   Trykowski explains that
8  prior to December 1999, the memoranda (FV-489) were only used in
9  two limited circumstances, i.e., to record inspections of raisins
10 that failed to ship or make final disposition for human consumption
11 within 90 calendar days, or any shipment of raisins that had been
12 returned to the inspection point. Beginning in December 1999, the
13 inspection service began using the memoranda for all shipments
14 being exported overseas for which a packer intended to submit a
15 claim to the Raisin Administrative Committee as part of the export
16 subsidy program. As a result, the use of memoranda increased
17 significantly.  According to Trykowski, the lack of memoranda prior
18 to 1999 is a function of their limited use in those years.
19 Nonetheless, Trykowski does not dispute that fifteen (15) memoranda
20 released to Lion were dated from 1995 to 1996.  This lends support
21 to Lion's theory that at least some memoranda should exist from
22 1997-1999, and if a search (claimed to be reasonable) uncovered
23 memoranda from 1995 and 1996, one would expect that such a search
24 would have yielded at least one memorandum from 1997-1999. In
25 Lion's FOIA appeal and its summary judgment motion, Lion also
26 argues additional memoranda from 1999-2000 should exist based on
27 the fact that the memoranda the USDA produced were assigned serial

28

**56**

numbers and there is a break in the numerical sequence of the produced memoranda (e.g., memorandum # 1 produced, memorandum #2 produced, memorandum # 4 produced; and # 3 is missing).  Trykowski concedes that "there are breaks in the numerical sequence of the Memos" but he believes that the breaks represent memoranda that "were not created, were voided, were lost, or were destroyed" and thus they "do not currently exist."  Trykowski bases his belief on his own "efforts and those of [his] staff to locate additional Memos," which did not yield such documents (from which Trykowski posits that they must have been voided, lost, destroyed or not created).   As discussed above, however, Trykowski did not sufficiently explain his or his staff's "efforts" to search for responsive records and thus the adequacy of the search remains in doubt.

The USDA's affidavits are insufficient to warrant summary judgment in favor of the USDA on Count III; more information is needed to assess the adequacy of the search(es).  During oral argument on the cross-motions for summary judgment, the USDA indicated it would like to "get this behind us" and it was open to suggestions on how to resolve the ongoing dispute over the memoranda and line check sheets.[17]

To develop an adequate factual record as to the adequacy of the search, Lion may engage in limited discovery.  Lion must confine its discovery questions to determining whether additional responsive memorandum reports of inspection and line check sheets

---

[17] Based on the history of this case this is manifest understatement.

1  exist and, if they exist, any justification for their non-
2  production, and the nature of the search for these records. Within
3  ten (10) calendar days following service of this order, the USDA
4  and Lion shall meet and confer as to the appropriate deponent(s).
5  After the deposition(s), Lion and the USDA shall submit a joint
6  written report on whether a controversy still remains as to this
7  FOIA request.

8       On the present record, neither the USDA nor Lion is entitled
9  to summary judgment on Count III.  The cross-motions are DENIED
10 without prejudice.

11 **D.   Count IV – FOIA Request No. 85-04**

12      FOIA Request No. 85-04 seeks USDA worksheets which the USDA
13 has previously withheld on the basis of Exemption 7(A).  However,
14 after the ALJ issued a decision on May 4, 2009, in the first and
15 second administrative proceedings, Lion submitted a new FOIA
16 request for the worksheets, and the USDA stated it will release the
17 worksheets.  In its reply brief, the USDA affirmatively declares
18 that it "no longer asserts Exemption 7(A) and the Court need not
19 reach the issue whether the exemption now applies."

20      Given the USDA's abandonment of its 7(A) exemption claim and
21 its stated willingness to produce the responsive documents, the
22 propriety of the USDA's past response to this FOIA request need not
23 be addressed.  The production of all nonexempt documents, "however
24 belatedly," moots a FOIA claim. *Papa*, 281 F.3d at 1013; *Yonemoto*,
25 305 F. App'x at 334.  As soon as the USDA properly certifies, via
26 declaration, that it has produced all responsive worksheets, Lion's
27 FOIA claim will be mooted and summary judgment in favor of the USDA

28

granted. *See Papa*, 281 F.3d at 1013 (stating that "[b]efore the court may dismiss the FOIA claims [as moot], the defendants must properly certify the[] production" of the requested documents). Within thirty (30) calendar days of service of this order, the USDA shall notify the court in writing on the status of the production.

E.   Count V – Disposition Records For Worksheets

With respect to the fifth count, Lion asserts that the USDA failed to respond to its "request for disposition records for worksheets." The evidence shows that Lion is mistaken. The USDA did respond to this request by noting that it was duplicative of other requests.

Lion does not mention this claim in its moving papers. In opposition to the USDA's motion, Lion's allocates three sentences of its 40-page opposition to addressing this claim. At oral argument on the cross-motions for summary judgment, Lion agreed that this FOIA claim can be "put to rest." On the record in open court Lion requested a Rule 41(a) voluntary dismissal without prejudice of Count V. This request is GRANTED. Count V of Lion's FAC is DISMISSED without prejudice. Fed. R. Civ. P. 41(a)(2).

F.   Count VI – FOIA Request No. 61-01

The sixth count alleges that the USDA failed to respond to Lion's appeal in which Lion objected to the USDA's redaction of information in the six-batches of inspection and compliance-related documents the USDA produced. After Lion filed its FAC, however, the USDA did respond, in detail, to the appeal. Lion has not since amended its FAC, and it does not mention this claim in its moving papers.

1     In opposition to the USDA's motion, Lion allocates two
2  sentences of its 40-page opposition to addressing this claim.   At
3  oral argument on the cross-motions for summary judgment, Lion also
4  agreed that this FOIA claim can be put to rest.   On the record in
5  open court Lion requested a Rule 41(a) voluntary dismissal without
6  prejudice of Count VI.   This request is GRANTED.   Count VI in
7  Lion's FAC is DISMISSED without prejudice.   Fed. R. Civ. P.
8  41(a)(2).

9  **G.   Count VII — FOIA Nos. 22-06, 23-06, 25-06, 26-06**

10    The seventh count asserts a FOIA claim on the grounds that
11 USDA's estimated costs to respond to Lion's request for physical
12 access to original documents was unreasonably excessive and
13 tantamount to an outright denial. Lion does not mention this claim
14 in its moving papers, and in its opposition brief to the USDA's
15 motion Lion (contrary to its plead claim) does not even argue that
16 the estimated cost ($6,822.80) is excessive.

17    During oral argument, the USDA reiterated its willingness to
18 provide physical access if Lion paid the stated sum.   Lion, on the
19 record, agreed to pay the stated sum, $6,822.80, so long as it is
20 not charged an additional fee for "access."   In its written
21 response to Lion's FOIA appeal, the USDA explained that its
22 estimated fees are for "search time" and "professional review
23 time."   Contrary to Lion's suggestion, there is no indication that
24 apart from the fees associated with these activities, the USDA
25 requested an "access" fee.

26    Lion has agreed to pay the requested sum.   This moots Count
27 VII.   Summary judgment is granted in favor of the USDA.

28

1  **H.    <u>Count VIII – Bad Faith</u>**

2      **Lion's eighth count asserts a stand alone claim for "bad**

3  **faith." Lion has not advanced any argument that a compensable,**

4  **independent claim for "bad faith" is cognizable in tort, contract,**

5  **or under an applicable federal statute.   At oral argument, Lion**

6  **conceded that Count VIII does not assert a compensable, independent**

7  **claim.    Because a showing of bad faith on the part of agency**

8  **responding to a FOIA request can open the door to limited**

9  **discovery, see *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812**

10  **(2d Cir. 1994), Lion stated that it included this "bad faith" claim**

11  **in the complaint only to provide a basis for discovery.**

12      **Because Count VIII does not assert a stand alone compensable**

13  **claim for relief, summary judgment on Count VIII is GRANTED in**

14  **favor of the USDA.**

15  **I.    <u>Count IX – APA</u>**

16      **Lion's ninth count asserts a claim for a violation of the**

17  **Administrative Procedures Act on the ground that the USDA's actions**

18  **were arbitrary and capricious.**

19      **Citing *Tuscon Airport Authority v. General Dynamics Corp.*, 136**

20  **F.3d 641, 645 (9th Cir. 1998), the USDA argues that the APA does**

21  **not apply to claims for which there is another adequate remedy in**

22  **court.   The USDA also cites to language in *Fisher v. FBI*, 94 F.**

23  **Supp. 2d 213, 216 (D. Conn. 2000): "The APA cannot support**

24  **jurisdiction where another statute provides for judicial review in**

25  **a given situation." The USDA contends that Lion's APA claim is**

26  **nothing more than an attack on the USDA's alleged "failures" in**

27  **responding to Lion's FOIA requests.**

28

1    "[F]ederal courts lack jurisdiction over APA challenges
2    whenever Congress has provided another 'adequate remedy.'" *Brem-Air*
3    *Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998) (quoting 5
4    U.S.C. § 704); *see also Bennett v. Spear*, 520 U.S. 154, 161-62
5    (1997) (recognizing that the "APA by its terms independently
6    authorizes review *only* when 'there is no other adequate remedy in
7    a court'") (quoting 5 U.S.C. § 704) (emphasis added); *Edmonds Inst.*
8    *v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005)
9    ("The law is clear, however, that review under the APA is
10   unavailable when another statute provides an adequate remedy.").
11   The Ninth Circuit recognizes: "[I]f a plaintiff can bring suit
12   against the responsible federal agencies under [a citizen-suit
13   provision], this action precludes an additional suit under the
14   APA." *Brem*, 156 F.3d at 1005 (alterations in original) (internal
15   quotation marks omitted). *See also Bowen v. Massachusetts*, 487 U.S.
16   879, 903 (1988) ("Congress did not intend the general grant of
17   review in the APA to duplicate existing procedures for review of
18   agency action."). The FOIA contains a citizen-suit provision,
19   *Walsh v. Department of Veterans Affairs*, 400 F.3d 535, 537 (7th
20   Cir. 2005), and it provides Lion with another adequate remedy. A
21   separate suit under the APA is, therefore, precluded.

22        The FOIA permits a document requester, like Lion, to file suit
23   in a district court and to obtain an order compelling the agency at
24   issue to comply with the document request. *See* 5 U.S.C. §
25   552(4)(B). The FOIA provides a remedy that is identical to the
26   remedy an aggrieved FOIA requester could obtain under the APA,
27   i.e., "a court order requiring total compliance with his [or her]

28

request." *Walsh*, 400 F.3d at 538 (rejecting the viability of a separate APA claim in a FOIA case); *accord Edmonds Inst.*, 383 F. Supp. 2d at 111-12 & n.10; *Laroche v. SEC*, No. C 05-4760 CW, 2006 WL 2868972, at *4-5 (N.D. Cal. Oct. 6, 2006), *aff'd*, 289 F. App'x 231 (9th Cir. 2008).  As such, the FOIA provides another adequate remedy. *See Walsh*, 400 F.3d at 538; *Edmonds Inst.*, 383 F. Supp. 2d at 111-12 & n.10.

Because FOIA's citizen-suit provision provides Lion with an another adequate remedy, a separate suit (or a separate review of the USDA's actions) under the APA is precluded and summary judgment on Lion's APA claim is GRANTED in favor of the USDA.

### V. CONCLUSION

For the foregoing reasons:

1.    On the present record, neither the USDA nor Lion is entitled to summary judgment as to Count I.  The cross-motions as to Count I are DENIED without prejudice, and limited discovery is permitted as specified above.

2.    On the present record, neither the USDA nor Lion is entitled to summary judgment as to Count II.  The cross-motions as to Count II are DENIED without prejudice, and limited discovery is permitted as specified above.

3.    On the present record, neither the USDA nor Lion is entitled to summary judgment as to Count III.  The cross-motions as to Count III are DENIED without prejudice, and limited discovery is permitted as specified above.

4.    As soon as the USDA properly certifies, via declaration, that it has produced all responsive worksheets, Count IV will be

**mooted and summary judgment in favor of the USDA GRANTED. The ruling on this count is deferred pending this certification.**

**5.   Count V of Lion's FAC is DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).**

**6.   Count VI of Lion's FAC is DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).**

**7.   Summary judgment is GRANTED in favor of the USDA on Count VII.**

**8.   Summary judgment is GRANTED in favor of the USDA on Count VIII.**

**9.   Summary judgment is GRANTED in favor of the USDA on Count IX.**

IT IS SO ORDERED.

**Dated:   July 10, 2009**              **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE